**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: SUBPOENA DUCES TECUM

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4870

DWIGHT L. BAILEY, M.D.; FAMILY
HEALTH CARE ASSOCIATES OF
SOUTHWEST VIRGINIA, PC,
Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(MC-99-5, MC-99-6)

Argued: June 6, 2000

Decided: September 8, 2000

Before NIEMEYER and WILLIAMS, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Williams and Senior Judge Beezer joined.

_____

**COUNSEL**

**ARGUED:** Dennis Eugene Jones, DENNIS JONES & ASSO-
CIATES, P.C., Lebanon, Virginia; Jay H. Steele, Lebanon, Virginia,

for Appellants. Steven Randall Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Abingdon, Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

In connection with an investigation into federal healthcare offenses, the United States Attorney for the Western District of Virginia issued and served four subpoenas duces tecum on April 29, 1999, under the authority of 18 U.S.C. § 3486, which authorizes the Attorney General or her designee to subpoena records that may be relevant to an investigation into federal healthcare offenses. The doctor and the professional healthcare corporation served with the subpoenas filed a motion to quash them on grounds that (1) they violated the recipients' Fourth and Fifth Amendment rights; (2) they were overly broad and oppressive and therefore unreasonable; and (3) they violated patients' privacy rights. The district court granted the motion to quash as to the personal papers of the doctor and otherwise denied the motion. For the reasons that follow, we affirm.

I

The four subpoenas at issue in this case were directed respectively to (1) "Dr. Dwight L. Bailey or custodian of records Dwight L. Bailey, M.D."; (2) "Dr. Dwight L. Bailey or custodian of records Ridgewood Health Care Clinic"; (3) "Dr. Dwight L. Bailey or custodian of records Family Healthcare Associates of Southwest Virginia, P.C."; and (4) "Dr. Dwight L. Bailey or custodian of records Abingdon Family Healthcare." Family Health Care Associates of Southwest Virginia, P.C., one of those served, is a Virginia professional corporation formed to engage in the delivery of medical services, and it owns and operates Ridgewood Health Care Clinic and Abingdon Family Health Care. The form of each subpoena and the description of documents in each are identical. Each commanded the addressee to appear at the Office of the United States Attorney on May 18, 1999, to produce

2

described documents and "to give testimony concerning the production and authentication of such records." Each subpoena stated that "[t]he production of such records is necessary to the United States Department of Justice's performance of its responsibility to investigate Federal health care offenses, as defined in[18 U.S.C. § 24]" and noted that failure to comply with the subpoena would render the addressee "liable to proceedings in the United States District Court to enforce obedience, pursuant to [18 U.S.C. § 3486(c)]."

Each of the subpoenas required the recipient to produce the following documents for the period from "January, 1992 through the present":

> 1. All patient records and documentation concerning patients whose services were billed to Medicare, Medicaid, UMWA, Trigon, Blue Cross Blue Shield, U.S. Department of Labor Black Lung Program and CHAMPUS, including complete medical files, patient appointment books, patient billing records, office sign-in sheets, and telephone messages in any form.

> 2. All purchase records and invoices reflecting Schedule II through V controlled substance purchases, DEA Official Order Forms, records of inventories, dispensing records, DEA Form 41 Registrants Inventory of Drugs Surrendered, DEA Form 106 Reports of Theft or Loss of Controlled Substances.

> 3. All original accounting and bank records, general ledgers, patient information/insurance cards, cash receipt and disbursement records, business ownership records and other items identifying sources of income from billings. These records include the following: [enumeration omitted].

> 4. All documents regarding health care plans' requirements for claim filing and record retention, including [enumeration omitted]. All documents regarding the Medicaid requirements for claim filing and record retention, including [enumeration omitted].

3

5. All records of any controlled substance samples provided to Dr. Dwight L. Bailey, M.D. by wholesale drug companies, manufacturers, or their representatives. All documents regarding proper uses and contraindications for controlled substances, including [enumeration omitted].

Dr. Bailey and Family Health Care Associates of Southwest Virginia, P.C. (collectively "Bailey") commenced this action in the district court by filing identical motions to quash the subpoenas under Federal Rule of Criminal Procedure 17(c). Bailey, who asserted that he was a target of the government's criminal investigation, contended that compliance with the subpoenas would require him to risk self-incrimination and to produce more than 15,000 patient files alone, consisting of between 750,000 and 1.25 million pages of material. He grounded his motion on contentions that (1) compliance with the subpoenas would "involve a risk of substantial and real testimonial self-incrimination" in violation of the Fifth Amendment; (2) the subpoenas were overly broad and disruptive of his medical practice; (3) the government had no probable cause to support the issuance of the subpoenas and therefore production of the requested material would constitute an unreasonable and unlawful seizure in violation of the Fourth Amendment; (4) the production of the subpoenaed material would violate his "patients' right of privacy in matters governed by the physician-patient privilege"; and (5) compliance with the subpoenas would be unreasonable and oppressive and could not be completed in the three-weeks' time allowed.

Following separate hearings before a magistrate judge and a district judge, the district court granted Bailey's motion"insofar as [the] subpoenas compel[led] the production of Dr. Bailey's personal financial records from Dr. Bailey." It denied the motion in all other respects but directed the parties to confer "to arrange the production of the documents requested . . . with the exception of any patient files and the items identified in item No. 4 . . . . The U.S. Attorney shall notify the movants, if, and when, he determines the need to review particular patient files or any items identified in item No. 4 of [each subpoena]."

Bailey elected to copy the subpoenaed documents before producing them, expending for "labor, equipment and supply costs" an amount that he claims exceeded $40,000. At the same time, he noticed this

4

appeal. Contrary to the government's suggestion, however, Bailey's compliance with the subpoenas does not render this appeal moot. See Reich v. National Eng'g & Contracting Co., 13 F.3d 93, 97-98 (4th Cir. 1993).

On appeal, Bailey argues three points: (1) the subpoenas violated Bailey's Fourth Amendment rights because the government failed to show probable cause that the documents sought are relevant and material to its criminal investigation; (2) the subpoenas were not sufficiently limited in scope and therefore were oppressive and unreasonable; and (3) the subpoenas violated privacy rights of Bailey's patients. He did not, in his brief on appeal, continue to make a Fifth Amendment challenge. We address Bailey's points in order.

II

At the outset, we address our jurisdiction to review Bailey's challenge where the district court denied his motion to quash.

Ordinarily, one served with a subpoena may not appeal the denial of his motion to quash without first resisting the subpoena and being held in contempt. See United States v. Ryan, 402 U.S. 530, 532 (1971) (citing Cobbledick v. United States, 309 U.S. 323 (1940)). This rule has developed in the context of grand jury proceedings, where the "necessity for expedition in the administration of the criminal law" serves as its justification. Id. at 533.

The appealability of district court orders enforcing subpoenas issued by government agencies in connection with administrative investigations has been regarded differently, however. See Reich v. National Eng'g & Contracting Co., 13 F.3d 93, 95 (4th Cir. 1993). These orders are considered "final" for purposes of 28 U.S.C. § 1291 because there is no ongoing judicial proceeding that would be delayed by an appeal. See id. at 95-96; see also Cobbledick, 309 U.S. at 330 (recognizing that district court's order enforcing administrative subpoena was immediately reviewable because the proceeding out of which the order arose "may be deemed self-contained, so far as the judiciary is concerned").

5

Although the instant appeal arises in the context of a motion to quash, rather than a motion to enforce, the same principle applies. Despite the criminal implications, the subpoenas challenged in this case were administrative subpoenas issued by an administrative agency pursuant to 18 U.S.C. § 3486, which is entitled "Administrative subpoenas in Federal health care investigations," and there are no ongoing judicial proceedings in the case. In fact, the district court's order directed the clerk to close the case. Therefore, consistent with our decision in Reich, we hold that jurisdiction exists under 28 U.S.C. § 1291 to review Bailey's challenge to the district court's denial of his motion to quash the § 3486 subpoenas.

III

The subpoenas in this case were issued on the authority of 18 U.S.C. § 3486, authorizing the Attorney General or her designee to issue subpoenas "[i]n any investigation relating to any act or activity involving a Federal health care offense".[1] As we have noted, they were administrative subpoenas issued to facilitate a federal criminal investigation into healthcare fraud, and they did not relate to any judicial proceeding.

Bailey mounts a multifaceted challenge to the subpoenas, arguing, albeit somewhat confusingly, that the statute itself, as well as its particular application in this case, violates the Fourth Amendment. His argument on the constitutionality of the statute itself appears to be grounded on the absence from the statute of a provision requiring a

_____

[1] As part of the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, which was enacted to "improve portability and continuity of health insurance coverage in the group and individual markets," H.R. Rep. No. 104-496, at 1, 66-67, reprinted in 1996 U.S.C.C.A.N. 1865, 1865-66, Congress included the Attorney General's subpoena power, as provided in 18 U.S.C. § 3486, to facilitate enforcement of federal statutes relating to healthcare fraud and abuse and thereby to promote the "availability and affordability of health insurance in the United States," id. at 70, reprinted in 1996 U.S.C.C.A.N. at 1869. Congress estimated that the costs lost to fraud and abusive practices amounted to "as much as 10 percent of total health care costs." Id. at 69, reprinted in 1996 U.S.C.C.A.N. at 1869.

showing of probable cause, for although he couches this argument in the assertion that the government failed "to show probable cause" that the documents sought by the subpoenas are relevant and material to its criminal investigation, the authorizing statute clearly does not contain a probable cause requirement. Rather, Congress stated that the subpoenas may issue "[i]n any investigation" relating to healthcare offenses for records "which may be relevant to an authorized law enforcement inquiry." 18 U.S.C. § 3486(a). We assume therefore that Bailey's challenge is directed at the absence of any probable cause provision in the statute.

The subpoena power -- the authority to command persons to appear and testify or to produce documents or things-- is a long-standing and necessary adjunct to the governmental power of investigation and inquisition, see United States v. Morton Salt Co., 338 U.S. 632, 642-43 (1950), and to the government's duty to provide trials, see, e.g., U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor"). All three branches of government may issue subpoenas -- see, e.g., 2 U.S.C. §§ 190m, 190l (Senate subpoenas); 15 U.S.C. § 1312(a) (Attorney General civil investigative demands in connection with antitrust investigations); 21 U.S.C. § 876 (Attorney General subpoenas in connection with investigations under controlled-substances statutes); Fed. R. Civ. P. 45 (judicial subpoenas in civil cases); Fed. R. Crim. P. 17 (judicial subpoenas in criminal cases) -- as may grand juries, see Kastigar v. United States, 406 U.S. 441, 443 (1972). The governmental "power of inquisition . . . which is not derived from the judicial function," is"analogous" to that of the grand jury, "which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." Morton Salt, 338 U.S. at 642-43. Any subpoena, however, may be enforced only by a court.

Because a subpoena duces tecum leads to "the compulsory production of private papers," a person served with a subpoena duces tecum is entitled to the Fourth Amendment's protection against unreasonableness. Hale v. Henkel, 201 U.S. 43, 76 (1906) (emphasis added). But "there is no unreasonable search and seizure, when a [subpoena], suitably specific and properly limited in its scope, calls for the pro-

7

duction of documents which, as against their lawful owner to whom the writ is directed, the party procuring its issuance is entitled to have produced." Wilson v. United States, 221 U.S. 361, 376 (1911). Articulating a standard for evaluating whether an administrative subpoena satisfies the Fourth Amendment, the Supreme Court has stated that the subpoena must be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." See v. City of Seattle , 387 U.S. 541, 544 (1967). This standard, however, "cannot be reduced to formula," because "relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209 (1946).

In this case, Bailey maintains that 18 U.S.C. § 3486 and the subpoenas that issued under that statutory provision violate the Fourth Amendment because they are not supported by probable cause. He argues, "Lest the Government forget, the Fourth Amendment, in relevant part states, `The right of the people to be secure in their papers and effects, against unreasonable searches and seizures, shall not be violated . . . but upon probable cause.'" (Emphasis and ellipsis as in Bailey's brief). Bailey then proceeds to analogize the authority granted by 18 U.S.C. § 3486 to the power to search and seize under the authority of a warrant. They both, he argues, require probable cause to be constitutional:

> If an FBI agent walks up to a person, and without probable cause, orders him to take out his wallet and hand over his personal papers, the Fourth Amendment is violated. If an FBI agent asks a magistrate to issue a search warrant of a person's wallet to seize papers and states no probable cause, the issuance of a warrant and subsequent search violates the Fourth Amendment. How then can a subpoena duces tecum calling for a person to deliver the papers out of his wallet, issued by an assistant U.S. Attorney without probable cause not be violative of the Fourth Amendment?

But Bailey's argument reveals a fundamental misunderstanding of the distinction between a warrant and a subpoena and the applicability of the Constitution's requirement for probable cause.

8

While the Fourth Amendment protects people "against unreasonable searches and seizures," it imposes a probable cause requirement only on the issuance of warrants. U.S. Const. amend. IV ("and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," etc.). Thus, unless subpoenas are warrants, they are limited by the general reasonableness standard of the Fourth Amendment (protecting the people against "unreasonable searches and seizures"), not by the probable cause requirement.

A warrant is a judicial authorization to a law enforcement officer to search or seize persons or things. To preserve advantages of speed and surprise, the order is issued without prior notice and is executed, often by force, with an unannounced and unanticipated physical intrusion. See Marshall v. Barlow's Inc., 436 U.S. 307, 316 (1978) (recognizing that search warrants may be "executed without delay and without prior notice, thereby preserving the element of surprise"). Because this intrusion is both an immediate and substantial invasion of privacy, a warrant may be issued only by a judicial officer upon a demonstration of probable cause -- the safeguard required by the Fourth Amendment. See U.S. Const. amend. IV ("no Warrants shall issue, but upon probable cause"); see also Camara v. Municipal Court, 387 U.S. 523, 528-29 (1967). The demonstration of probable cause to "a neutral judicial officer" places a"checkpoint between the Government and the citizen" where there otherwise would be no judicial supervision. Steagald v. United States, 451 U.S. 204, 212 (1981).

A subpoena, on the other hand, commences an adversary process during which the person served with the subpoena may challenge it in court before complying with its demands. See City of Seattle, 387 U.S. at 544-45 (noting that an administrative subpoena "may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply"); Oklahoma Press, 327 U.S. at 217 ("Persons from whom [an agency] seeks relevant information are not required to submit to [the agency's] demand, if in any respect it is unreasonable . . . . To it they may make `appropriate defence' surrounded by every safeguard of judicial restraint"). As judicial process is afforded before any intrusion occurs, the proposed intrusion is regulated by, and its justification derives from, that process.

9

In short, the immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant demand the safeguard of demonstrating probable cause to a neutral judicial officer before the warrant issues, whereas the issuance of a subpoena initiates an adversary process that can command the production of documents and things only after judicial process is afforded. See United States v. Miller, 425 U.S. 435, 446 & n.8 (1976). And while a challenge to a warrant questions the actual search or seizure under the probable cause standard, a challenge to a subpoena is conducted through the adversarial process, questioning the reasonableness of the subpoena's command.

If Bailey were correct in his assertion that investigative subpoenas may be issued only upon probable cause, the result would be the virtual end to any investigatory efforts by governmental agencies, as well as grand juries. See Oklahoma Press, 327 U.S. at 213. This is because the object of many such investigations -- to determine whether probable cause exists to prosecute a violation -- would become a condition precedent for undertaking the investigation. This unacceptable paradox was noted explicitly in the grand jury context in United States v. R. Enterprises, Inc., 498 U.S. 292, 297 (1991), where the Supreme Court stated:

> [T]he Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists.

This observation about the grand jury subpoena is likewise applicable to investigative subpoenas issued by governmental agencies. See Oklahoma Press, 327 U.S. at 201 (noting that"[t]he very purpose of the subpoena . . . is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the [agency's] judgment, the facts thus discovered should justify doing so"); id. at 216 (stating that the inquiry by subpoena need not be "limited . . . by forecasts of the probable result of the investigation" (quoting Blair v. United States, 250 U.S. 273, 282 (1919))).

The value of constraining governmental power, which Bailey has urged through his misplaced probable cause argument, is nevertheless

10

recognized in the judicial supervision of subpoenas. Application of the reasonableness standard protects this value and yet preserves the governmental power of investigation. Articulating the reasonableness standard, the Supreme Court has stated that subpoenas shall not be "excessive[ ] for the purposes of the relevant inquiry"; they must be "authorized by Congress . . . for a purpose Congress can order"; and they must be "relevant to the inquiry." Oklahoma Press, 327 U.S. at 209.**2** The requirement that subpoenas be used only for a legitimate and authorized governmental purpose prohibits the government from "engag[ing] in arbitrary fishing expeditions" and from "select[ing] targets of investigation out of malice or an intent to harass." R. Enterprises, 498 U.S. at 299. A subpoena "will be disallowed if it is `far too sweeping in its terms to be regarded as reasonable' under the Fourth Amendment," United States v. Calandra , 414 U.S. 338, 346 (1974) (quoting Hale, 201 U.S. at 76), or if it is not "suitably specific and properly limited in its scope," Wilson , 221 U.S. at 376. But before a court will conclude that a subpoena is "arbitrarily excessive," it may expect the person served "to have made reasonable efforts . . . to obtain reasonable conditions" from the government. Morton Salt, 338 U.S. at 653.

In short, an investigative subpoena, to be reasonable under the Fourth Amendment, must be (1) authorized for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further its purpose; (3) sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome; and (4) not overly broad for the purposes of the inquiry as to be oppressive, a requirement that may support a motion to quash a subpoena only if the movant has first sought reasonable conditions from the govern-

_____

**2** A subpoena's relevancy to its purpose -- whether for a criminal investigation, a civil investigation or rulemaking, or a trial -- introduces additional and different factors, depending on the purpose. See R. Enterprises, 498 U.S. at 297-98 (noting difference of relevancy factors between pretrial subpoena and grand jury subpoena); United States v. Nixon, 418 U.S. 683, 700 (1974) (requiring for enforcement of a pretrial subpoena "(1) relevancy; (2) admissibility; [and] (3) specificity"); cf. United States v. LaSalle Nat'l Bank, 437 U.S. 298, 312 (1978) (limiting function of Internal Revenue Service subpoena under language of 26 U.S.C. § 7602).

11

ment to ameliorate the subpoena's breadth. But a subpoena need not be supported by probable cause, as Bailey contends.

IV

With these Fourth Amendment principles in hand, we turn first to analyze the grant of the investigative subpoena power by 18 U.S.C. § 3486 to determine whether it violates any reasonableness factor applicable, and then to analyze whether the exercise of that power as applied to Bailey is unreasonable.

A § 3486 subpoena must be issued in connection with an investigation of a federal healthcare offense and is limited to the production and authentication of documents and things that may be relevant to that investigation. See 18 U.S.C. § 3486(a)(1). The subpoena must "describe" the items required to be produced; it must provide "a reasonable period of time within which" to comply; and it may not require production more than 500 miles from the place of service. 18 U.S.C. § 3486(a)(2), (3). Any person served with a subpoena who "complies in good faith" is given immunity from civil suit for his compliance, 18 U.S.C. § 3486(d), and any "[h]ealth information about an individual that is disclosed" may not be used against that individual "unless the action or investigation arises out of and is directly related" to receipt of healthcare, payment for healthcare, or a fraudulent claim related to healthcare, 18 U.S.C. 3486(e). Thus, as authorized by statute, the § 3486 subpoena power falls within the legitimate governmental power of inquisition on a matter in which the government has a legitimate interest and is authorized to act, and it permits only subpoenas that call for testimony or the production of documents and things relevant to that inquiry. And it not only requires specificity but also assures a reasonable response time and a limited geographical reach. Accordingly, we reject Bailey's implied argument that the subpoena power as defined by 18 U.S.C. § 3486 is constitutionally unreasonable.

Bailey also contends that the subpoenas as issued under 18 U.S.C. § 3486 were not relevant to the government investigation and were "overly broad and oppressive" -- the second and fourth factors we have enumerated above -- and therefore were constitutionally unreasonable, in violation of the Fourth Amendment. He argues that

12

because "the government [sought] a huge volume of documents," the production "of those documents, absent a showing of relevancy and need, i.e. probable cause, [was] oppressive." Indeed, he characterizes the government's effort as a "witchhunt."

The government contends, on the other hand, that the"large number of patient files and controlled substance records" responsive to its subpoenas is an "indici[um]" of the scope of fraud it is investigating. It notes that it would be "an oddity of jurisprudence" if a physician with a high-volume, government-subsidized practice could avoid complying with such subpoenas, whereas a physician with a lower volume and therefore with a narrower potential scope of fraud would have to comply. The government observes that the"volume of documents cannot be the sole criteri[on] for determining whether compliance with a subpoena is unreasonable," an observation with which Bailey agrees in the abstract.

While the scope of a subpoena, if not relevant to a legitimate investigation, and overly broad and oppressive, can support a claim of unconstitutionality under the Fourth Amendment, these characteristics cannot always be determined in the abstract. The question of the permissible scope is generally "variable in relation to the nature, purposes and scope of the inquiry." Oklahoma Press, 327 U.S. at 209. Thus, if Bailey had treated 15,000 patients over a period of seven years and all of them were reimbursed on claims he submitted, a suspicion of fraud on these claims would justify a review of Bailey's documentation of services to these patients, of the claims submitted on their behalf, and of the reimbursements collected. Even though these documents might be numerous, they would reasonably relate to and further the government's legitimate inquiry, which might be defined by any of 13 federal statutory offenses, including fraud. See 18 U.S.C. § 24.

Bailey points out that the sheer volume of documents, the substantial expense incurred for their reproduction, and the disruption to his practice caused by their production are all indicative of the subpoenas' overbreadth and oppressiveness. But these specific burdens could have been materially reduced or avoided if Bailey had accepted the accommodation offered by the government and encompassed in the district court's order. The district court specifically stated that Bailey

13

could retain patient files and claim-processing files, subject to the call of the U.S. Attorney expressing a "need to review particular patient files" or files relating to claim processing. Bailey specifically rejected this offer.

Yet, as a condition to maintaining the argument that an investigative subpoena is overly broad and oppressive, Bailey would have to be able to point to reasonable efforts on his behalf to reach accommodation with the government. See Morton Salt, 338 U.S. at 653 ("Before the courts will hold an order seeking information reports to be arbitrarily excessive, they may expect the supplicant to have made reasonable efforts . . . to obtain reasonable conditions"). Bailey has given no reason why the government's proffered accommodation in this case would not have alleviated the burden of compliance, nor has he explained why he did not accept the accommodation.

Finally, to define the reasonableness of a subpoena based on the volume of items identified for production would be to require the government to ascertain, before issuing a subpoena, the extent of any wrongdoing. But ascertaining the extent of wrongdoing is itself a primary purpose for the issuance of the subpoena. See Oklahoma Press, 327 U.S. at 201 (noting that administrative subpoenas are authorized "to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one").

In sum, we cannot conclude that the subpoenas, particularly when accompanied by an offer of accommodation, were either overly broad as to be oppressive or lacking in relevance as to be unreasonable, in violation of the Fourth Amendment.

V

Finally, Bailey contends that his patients' privacy interests in their medical files outweigh the government's interest in those files. The government, on the other hand, contends that its stake in the investigation and the strong public interest in law enforcement overcome any individual privacy interests, particularly in this case where the patients have "a reduced expectation of privacy in patient records" because "nearly every patient has agreed pursuant to their [sic] insur-

14

ance policies and releases to allow their [sic] medical records to be reviewed."

We agree with the government that any disclosure of information in the files of Bailey's patients is not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." Whalen v. Roe, 429 U.S. 589, 602 (1977). The government has a compelling interest in identifying illegal activity and in deterring future misconduct. See Ferguson v. City of Charleston, 186 F.3d 469, 483 (4th Cir. 1999), cert. granted on other grounds, 120 S. Ct. 1239 (2000). And this interest outweighs the privacy rights of those whose records were turned over to the government, particularly in light of the limitation placed on uses of subpoenaed information by § 3486. See 18 U.S.C. § 3486(e)(1) (prohibiting use of disclosed information except as "directly related to receipt of health care or payment for health care or action involving a fraudulent claim related to health," or as authorized by a court for good cause shown).

Accordingly, the judgment of the district court denying in part Bailey's motions to quash the subpoenas duces tecum in this case is

AFFIRMED.

15