STATE of Iowa ex rel. Thomas J.
MILLER, Attorney General
of Iowa, Appellant,

v.

PUBLISHERS CLEARING HOUSE,
INC., a New York Corporation,
Appellee.

No. 99–0253.

Supreme Court of Iowa.

May 31, 2001.

Rehearing Denied Oct. 3, 2001.

Thomas J. Miller, Attorney General, and Steve St. Clair, Assistant Attorney General, for appellant.

W. Don Brittin, Jr., Michael W. Thrall, and Stephanie L. Marett of Nyemaster,

Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee.

LARSON, Justice.

The consumer fraud division of the attorney general's office (attorney general) began an investigation of a sweepstakes program conducted by Publishers Clearing House (PCH). The attorney general believed PCH was illegally targeting vulnerable Iowans, particularly the elderly. When PCH refused to furnish some of the information requested, the attorney general served it with a subpoena and ultimately sought a court order compelling compliance. The district court ordered production of some, but not all, of the information requested, and the attorney general appealed. We reverse and remand.

## I. *Facts and Prior Proceedings.*

The attorney general began an investigation into direct mail solicitation by PCH to see if PCH was inducing Iowa residents to mistakenly believe additional purchases of magazines and other merchandise would improve their chances of winning its sweepstakes. There was evidence that purchases made by elderly Iowans could not be explained on the basis of ordinary personal use. Some of the purchases were substantial and would remain unopened and unused, perhaps even unusable by the purchaser. The attorney general was concerned these purchases were motivated by statements in the solicitations that an individual is a "good customer," "a friend of The Clearing House," "on our Best Customer list, on our Contenders List, on our President's Club Member List" and "isn't the type of person who wants 'something for nothing,' but is a deserving customer of Publishers Clearing House."

The attorney general sought to determine whether targeted persons were in-

duced by fraud to invest in additional merchandise. According to some of the evidence gathered, an eighty-three-year-old Iowa woman, who believed the "prize patrol" would soon be visiting her, purchased a number of videotapes, although she had no VCR. She purchased compact discs, although she had no CD player, and subscribed to more than forty magazines. These included *Men's Journal, PC World,* although she had no computer, *Sailing, Sports Illustrated for Kids, Road & Track, Popular Mechanics, Sesame Street Parents, Cat Fancy,* although she had no cat, *Outdoor Life,* and *Fortune.* Other people had also purchased substantial amounts of merchandise for which they had no apparent use.

During the investigation, the attorney general learned that PCH monitors the purchase volume of specific customers and periodically sends an informational mailing to those customers who may not understand they do not need to make purchases in order to enter the sweepstakes. The attorney general sought to verify and evaluate the effectiveness of these remedial measures and gain other information to protect vulnerable purchasers. The parties engaged in an ongoing discussion concerning the information requested by the attorney general. Finally, on February 3, 1998, the attorney general served a subpoena for the following information:

Separately for calendar years 1996 and 1997, a list of all Iowa customers of Publishers Clearing House who made purchases exceeding $200.00 in the year in question. For each name listed, provide the person's mailing address, phone number if available, and the dollar amount of total purchases by that person for the year in question. For each person listed, also indicate whether that person is currently in your active mail-

ing category, and, if not, the date on which the person was removed from that category. In addition, for anyone appearing on either the 1996 or 1997 list whose total purchase amount for the year in question exceeded $2,500.00, provide an itemization of that person's purchases for the year in question by item, cost, and date of purchase.

After the subpoena was served, discussions between the parties continued, and eventually some accommodations were reached. PCH provided a letter listing the number of consumers who made purchases within different dollar ranges ($100 increments from $200 to $500, and then $500 increments up to $2500). However, PCH claimed this "range information" was a trade secret and should remain confidential. The attorney general agreed to accept customer information only for those who spent $1000 or above for the period in question, rather than $200 or above.

PCH ultimately responded to the subpoena by providing a single list of Iowa customers (instead of separate lists for 1996 and 1997) who had spent $1000 or more in a year. The list was broken into ranges instead of specific dollar amounts, but even the $500 divisions stopped above $2500 no matter how far above $2500 they might be and did not include an itemization of purchases for customers spending over $2500. PCH also failed to indicate whether each person listed was still in its active mailing category. By letter of April 1, 1998, PCH declined to provide this information, objecting on the grounds of relevance, materiality, burdensomeness, and intrusiveness. In response to the attorney general's request for additional support for the contention the range information was a trade secret, PCH merely claimed it was "self-evident" that such information was "confidential proprietary information that can be used by others to obtain an economic benefit."

On June 17, 1998, the attorney general filed an application for a court order compelling compliance with the subpoena. In an order filed August 3, 1998, the district court found PCH "substantially complied" with the subpoena, and it would be "extremely burdensome," costing in excess of ten thousand dollars, to fully comply with the subpoena. The court found the range information (the number of PCH customers at various spending levels), as well as other PCH material provided to the attorney general, were trade secrets. On August 13, 1998, the attorney general filed an Iowa Rule of Civil Procedure 179(b) motion in response to the ruling. In ruling on the rule 179(b) motion, the district court found that the cost of compliance would be just under ten thousand dollars, not over that amount, PCH should provide separate lists for 1996 and 1997, and it should indicate whether each name on the list is actively receiving mailings. This ruling still did not require PCH to provide a date when customers were removed from the active mailing list, the total amount spent by each customer, or an itemized list of purchases for customers spending over $2500 in a year, as requested in the subpoena. (The attorney general agreed to PCH's request not to be required to provide the dollar amount of total purchases for customers spending less than $2500.) The attorney general appealed, contending the court erred in failing to give the attorney general's subpoena the broad application intended by the discovery provisions of our consumer fraud statute, Iowa Code § 714.16 (1997), and erred in holding some of the material sought should be protected as trade secrets.

## II. Standard of Review.

The attorney general claims our review should be de novo because a civil

action filed pursuant to the consumer fraud statute "shall be by equitable proceedings." *See* Iowa Code § 714.16(7). Under Iowa Rule of Appellate Procedure 4, appellate review in equity cases is de novo. The attorney general argues that the unique equitable remedies available under Iowa Code section 716.16(6) distinguish the enforcement of a subpoena under the consumer fraud statute from enforcement of an administrative agency subpoena under our administrative procedure act, Iowa Code ch. 17A. PCH claims a subpoena under the consumer fraud act is subject to the same standard of review as agency subpoenas under chapter 17A, and "[b]ecause agency subpoena power is essentially a discovery tool, our review is limited to abuses of trial court discretion." *See Citizens' Aide/Ombudsman v. Grossheim,* 498 N.W.2d 405, 407 (Iowa 1993).

We reject the attorney general's argument that, because the proceedings for an injunction under the consumer fraud statute are in equity, we should review collateral discovery issues de novo as well. As PCH points out, this is not an action under Iowa Code section 714.16(7) to enjoin PCH's activities (which clearly would be equitable), rather it is a discovery procedure, and the standard of review is for abuse of discretion, as in other administrative subpoena cases. *See Grossheim,* 498 N.W.2d at 407. In exercising such discretion, a court should keep in mind the broad scope of the attorney general's subpoena power under the consumer fraud statute. In an analogous case, involving an administrative subpoena, we noted the extensive powers of an investigating authority:

> Administrative agencies are normally invested with broad investigative powers to enable them to effectively carry out their legislative mandates. Agencies with authority to conduct investigations for the purpose of ascertaining probable cause for the institution of a contested case have powers comparable to those of a grand jury.

*Iowa Civil Rights Comm'n v. City of Des Moines/Personnel Dep't,* 313 N.W.2d 491, 495 (Iowa 1981).

When an agency has investigative and accusatory powers, "courts have been cautious to interfere with agency subpoena powers except to preserve due process rights." *Id.* Agency subpoenas are enforced if they are "(1) within the statutory authority of the agency, (2) reasonably specific, (3) not unduly burdensome and (4) reasonably relevant to the matters under investigation." *Iowa City Human Rights Comm'n v. Roadway Express, Inc.,* 397 N.W.2d 508, 510 (Iowa 1986). Subpoenas are not enforced if they do not meet these standards because, it has been said, these standards mark the bounds of a permissible "constructive search" under the Fourth Amendment. *Scott v. Ass'n for Childbirth at Home, Int'l,* 88 Ill.2d 279, 58 Ill.Dec. 761, 430 N.E.2d 1012, 1021 (1981); *see also United States v. Morton Salt Co.,* 338 U.S. 632, 651–54, 70 S.Ct. 357, 368–70, 94 L.Ed. 401, 415–17 (1950); *United States v. Bailey (In re Subpoena Duces Tecum),* 228 F.3d 341, 347 (4th Cir.2000) (administrative subpoenas must satisfy Fourth Amendment requirements: the subpoena must be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome); *Dow Chem. Co. v. Allen,* 672 F.2d 1262, 1267 (7th Cir.1982) ("The burdensomeness test finds its genesis in the Fourth Amendment, which prescribes that disclosure shall not be unreasonable.").

The United States Supreme Court has said in reference to agency investigations:

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Be-

cause judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence *but can investigate merely on suspicion the law is being violated, or even just because it wants assurance that it is not.*

*Morton Salt,* 338 U.S. at 642–43, 70 S.Ct. at 364, 94 L.Ed. at 410–11 (emphasis added). PCH makes no Fourth Amendment claim here, and in fact, specifically rejects a constitutional/de novo review in favor of an abuse-of-discretion review.

### III. *Enforcing the Subpoena.*

■ PCH does not challenge enforcement of the subpoena on the first two *Roadway Express* factors—that it is within the statutory authority of the attorney general and it is reasonably specific. PCH does, however, claim the subpoena was unduly burdensome and not reasonably relevant to the matters under investigation. A party opposing enforcement of this type of subpoena must establish that the subpoena is unreasonable or that compliance would be unnecessarily burdensome. *RNR Enters., Inc. v. SEC,* 122 F.3d 93, 97 (2d Cir.1997); *FDIC v. Wentz,* 55 F.3d 905, 908 (3d Cir.1995) ("The subpoenaed party bears the heavy burden of establishing an abuse of the court's process.").

The broad extent of the attorney general's investigative powers, and therefore necessarily a limitation on a trial court's discretion to restrict those powers, is evidenced by the language of the statute:

When it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any practice declared to be unlawful by this section or *when the attorney general believes it to be in the public interest that an investigation should be made to ascertain whether* a person in fact has engaged in, is engaging in or is about to engage in, any such practice, the attorney general may:

*a.* Require such person to file ... a statement or report in writing under oath or otherwise, as to all the facts and circumstances concerning the sale or advertisement of merchandise by such person, and such other data and information *as the attorney general may deem necessary;*

*b.* Examine under oath any person in connection with the sale or advertisement of any merchandise;

*c.* Examine any merchandise or sample thereof, record, book, document, account or paper *as the attorney general may deem necessary* ....

Iowa Code § 714.16(3) (emphasis added).

PCH contends the district court did not abuse its discretion in refusing to order further disclosure for two reasons: (1) it had "substantially complied with" the subpoena, and (2) "further compliance would be burdensome in relation to the benefit of further compliance."

### A. *The substantial-compliance argument.*

■ The district court found PCH had "substantially complied" with the subpoena and further that complete compliance would be "extremely burdensome." The attorney general argues that there is no express authority for applying a substantial-compliance standard. PCH concedes there is no such express authority, but it

argues that a court may "modify" a subpoena to accomplish the same purpose. It argues the court has the authority to modify a subpoena "if the demand is unduly burdensome," citing *FTC v. Texaco, Inc.,* 555 F.2d 862, 881 (D.C.Cir.1977).

■ We reject the argument that substantial compliance excuses PCH from furnishing all of the information requested. PCH must show that production of the information it seeks to exclude would be unduly burdensome. To adopt PCH's argument that it is excused from producing all of the information requested by producing some of it would allow it, rather than the attorney general, to determine the scope of the discovery. The key is whether production of the omitted information would be unduly burdensome. *See Berg v. Des Moines Gen. Hosp. Co.,* 456 N.W.2d 173, 177 (Iowa 1990) ("[B]urdensomeness may, upon a proper showing, be a basis for limiting discovery."); *see also Texaco,* 555 F.2d at 882 ("[C]ourts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business.").

B. *Burdensomeness.* Resolution of the discovery issue in this case boils down to whether full compliance with the attorney general's subpoena would be unduly burdensome to PCH. We have discussed burdensomeness in the context of garden-variety discovery and concluded:

> In determining whether the discovery is unduly burdensome or expensive, the court may take into account "the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." A certain amount of inconvenience inheres in discovery and

must be tolerated by the parties. Nonetheless, where the nature and complexity of the inquiry show compliance with the discovery request would require an unreasonable amount of time and an unreasonable expenditure of money, a protective order is appropriate.

*Berg,* 456 N.W.2d at 177 (quoting Iowa R. Civ. P. 121(c)(3)) (citations omitted).

■ In this consumer fraud case, as to which the legislature has granted plenary investigative powers to the attorney general, we believe the requirements for showing undue burden should be at least this high. As a federal court has said,

> [s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest. The burden of showing that the request is unreasonable is on the subpoenaed party. Further, that burden is not easily met where, as here, the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose. Broadness alone is not sufficient justification to refuse enforcement of a subpoena. *Thus courts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business.*

*Texaco,* 555 F.2d at 882 (citations omitted); *accord FTC v. Invention Submission Corp.,* 965 F.2d 1086, 1090 (D.C.Cir.1992) (quoting *Texaco*); *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 477 (4th Cir.1986) ("The party subject to the subpoena must show that producing the documents would seriously disrupt its normal business operations."); *Attorney General v. Bodimetric*

*Profiles,* 404 Mass. 152, 533 N.E.2d 1364, 1367–68 (1989) ("Documentary demands exceed reasonable limits only when they seriously interfere with the functioning of the investigated party by placing excessive burdens on manpower or requiring removal of critical records ... even when such a demand imposes considerable expense and burden on the investigated party." (citations omitted)).

■ Here, the district court found the cost of compliance would be "just under $10,000" in addition to approximately $13,000 already spent in providing information. In light of the 1900 Iowans who have spent $1000 or more on PCH merchandise, or a total Iowa income for PCH exceeding $1.9 million, it is clearly not an undue burden in terms of expense to require compliance.

■ PCH also contends the process of obtaining the additional information would divert its management and staff from other essential business and delay the normal company operations. However, it has not been specific as to why with respect to the 1900 customers in question this presents a significant problem when PCH has already furnished information on many more customers using the same procedures to gather the information. Its claim that providing the subpoenaed information on its relatively few high-dollar customers would subject it to an undue burden is simply not persuasive.

The attorney general wants information on these customers spending over $1000 to assess the success of PCH's remedial programs aimed at preventing elderly people from spending excessively on products they do not need, and probably will not use, in order to enhance their chances of winning the sweepstakes. We believe PCH has, as a matter of law, failed to carry its burden of showing that compliance with this subpoena would "threaten[ ]

to unduly disrupt or seriously hinder normal operations of [its] business." *Texaco,* 555 F.2d at 882. In short, PCH has failed to show that the information is not relevant or production of it is unduly burdensome. *See Roadway Express,* 397 N.W.2d at 510. The district court abused its discretion in concluding otherwise.

## IV. *The Trade Secret Issue.*

■ The district court ruled that

PCH's customer list and the other material provided to the Attorney General's Office by PCH, including, without limitation, the range information disclosed by the Attorney General's Office in its Application is a trade secret as defined in Iowa Code chapter 550.

The court therefore ordered that all information sought by the subpoena should be protected as trade secrets under Iowa Code chapter 550. The attorney general contends this ruling is overbroad and made without specific fact-findings or adequate proof because it merely recited the words of the statute defining trade secrets. *See* Iowa Code § 550.2(4).

PCH concedes the court did not make particularized fact-findings, but it argues there was adequate evidence to support the ruling. PCH contends the evidence was undisputed and was adequate for the court to have made such findings if it had done so. PCH contends the court had no obligation to repeat the undisputed facts. Moreover, PCH contends that the only materials the court was considering was the customer list and range information, so its otherwise broad ruling must be read as being limited to those items.

Because of the courts' strong interest in the free flow of information on one hand and protection from commercial damage and abuse of discovery on the other, we

have developed rules for resolving trade-secret cases. We have

> insisted on "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements in order to establish good cause [for a protective order]."

*State ex rel. Miller v. Nat'l Dietary Research, Inc.,* 454 N.W.2d 820, 823 (Iowa 1990) (quoting *Farnum v. G.D. Searle & Co.,* 339 N.W.2d 384, 389 (Iowa 1983)).

 In addition to specific demonstrations of fact, district courts are to apply three criteria for evaluating requests for a protective order under these circumstances: (1) the harm posed by dissemination must be substantial and serious, (2) the order must be narrowly drawn and precise, and (3) there must be no alternative means of protecting the public interest that intrudes less directly on expression. *Farnum,* 339 N.W.2d at 389–90.

We agree with the attorney general that the order here, merely tracking the language of the statute without particularized findings, presented facts that were merely stereotypical and conclusive, and thus insufficient. PCH did not present particular or specific facts to support its trade-secret claim by merely stating that the trade-secret status of the information was "self-evident." Moreover, the court failed to apply the three-part test for the protective order as required by *Farnum.*

For these reasons, we hold the court abused its discretion in ordering the protective order on trade-secret grounds. We reverse and remand with instructions to the court to enforce the attorney general's subpoena.

**REVERSED AND REMANDED.**