# IN THE COURT OF APPEALS OF IOWA

No. 13-0878
Filed November 26, 2014

**STATE OF IOWA ex rel. THOMAS J. MILLER,**
**ATTORNEY GENERAL OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ASSOCIATED COMMUNITY SERVICES, INC.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

A foreign corporation appeals a district court order requiring it comply with an investigatory subpoena. **AFFIRMED.**

Thomas M. Boes of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Steve St. Clair, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

We must decide whether the district court abused its discretion in enforcing an investigative subpoena issued by the Iowa Attorney General pursuant to the Iowa Consumer Fraud Act.

*I. Background Proceedings*

The State of Iowa, through Attorney General Thomas J. Miller, sued Associated Community Services, Inc. ("ACS") for claimed violations of Iowa's Consumer Fraud Act. *See* Iowa Code § 714.16 (2013). The suit culminated in a consent judgment resolving "any and all claims by the Iowa Attorney General against Defendant for alleged violations of the [Consumer Fraud Act] that occurred prior to the effective date of this Consent Judgment in connection with the acts and practices addressed in the Petition in this cause." ACS was to "refrain from engaging, directly or indirectly, in acts or practices that violate the Iowa Consumer Fraud Act . . . in connection with the solicitation of contributions for charitable purposes, either directed to Iowa residents or from an Iowa location."

The acts and practices alleged in the petition occurred in 2009 and 2010. The consent judgment was signed by a representative of ACS on March 11, 2011, and was fully executed and approved on March 31, 2011.

After ACS signed the consent judgment but before its effective date, the attorney general received a complaint of solicitation by ACS. The attorney general later received a second complaint. Two investigative subpoenas were issued seeking information about ACS's role in soliciting and receiving donations from Iowa consumers. One of the subpoenas demanded "a list of all recordings

in [ACS's] possession or control of solicitation calls made to Iowa residents on or after May 1, 2011." The subpoena also demanded "a copy of all recordings that both (i) are or should be on the list . . . and (ii) were made on behalf of Foundation of American Veterans."

When ACS did not comply with the subpoenas, the attorney general filed a district court application to enforce them. Following arguments, the court issued an order mandating compliance within thirty days. The court rejected ACS's contention that the subpoenas violated the terms of the consent judgment. The court further found moot ACS's constitutional free-speech challenge to the attorney general's request for an injunction, noting this request was previously withdrawn. ACS appealed the order but later dismissed the appeal.

In time, the attorney general issued a third investigative subpoena—subpoena 2308—directing ACS to appear in Iowa and give evidence under oath regarding "[t]he completeness of the set of recordings" produced pursuant to one of the prior subpoenas. ACS refused to appear and the attorney general again sought district court enforcement. The court ordered ACS to comply with subpoena 2308 and enjoined ACS from "making solicitations for donations in any manner to any person in the State of Iowa and, further, from receiving or collecting any donation from the State of Iowa" until it fully complied with this subpoena.

On appeal of this order, ACS contends: (A) "subpoena no. 2308 and the district court's ruling to enforce the subpoena exceed the powers and authority granted by the Iowa Consumer Fraud Act," (B) "the injunctive relief granted by the district court is an unconstitutional prior restraint on the free speech rights of

ACS," and (C) "the prior consent judgment agreed to by the State and ACS and entered by the district court bars the State from seeking relief via subpoena 2308."

## II. Analysis

### A. Authority to Issue Subpoena

ACS specifically argues (1) the attorney general lacks authority to subpoena an out-of-state witness, (2) Iowa Code section 714.16(3)(b) does not authorize the attorney general to produce a representative to give a statement under oath, and (3) the Iowa Consumer Fraud Act does not allow for injunctive relief. Our review is for an abuse of discretion. *State ex rel. Miller v. Publishers Clearing House, Inc.*, 633 N.W.2d 732, 736 (Iowa 2001). "In exercising such discretion, a court should keep in mind the broad scope of the attorney general's subpoena power under the consumer fraud statute." *Id.*

ACS's first contention does not find support in statute or case law. The Consumer Fraud Act authorizes the attorney general to issue investigative subpoenas. Iowa Code § 714.16(4)(a). The pertinent provision states:

> To accomplish the objectives and to carry out the duties prescribed by this section, the attorney general, in addition to other powers conferred upon the attorney general by this section, may issue subpoenas to any person, administer an oath or affirmation to any person, conduct hearings in aid of any investigation or inquiry, prescribe such forms and promulgate such rules as may be necessary, which rules shall have the force of law.

*Id.* "Person" is broadly defined as:

> any natural person or the person's legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof.

*Id.* § 714.16(1)(j). The State cited section 714.16(4) in its subpoena and its application to enforce the subpoena. "We may decide an issue presented to, but not decided by, the district court when it is urged on appeal by the appellee as an alternative ground for affirmance." *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 457 n.7 (Iowa 2014).

Several Iowa Supreme Court opinions have confirmed the State's broad investigative subpoena authority. In *State ex. rel. Miller v. Smokers Warehouse Corp.*, 737 N.W.2d 107 (Iowa 2007), an out-of-state corporation challenged the attorney general's authority to issue a civil investigative demand. After finding the demand was essentially an administrative subpoena, the court concluded the demand was authorized by section 714.16(4). *Smokers Warehouse Corp.*, 737 N.W.2d at 109-10. The court characterized the defendants' reading of the statute as "too narrow and restrictive" and stated, "to adopt the defendants' argument would place form over substance, a result inconsistent with the broad interpretation historically given to the investigative powers of administrative agencies in general and to the investigative powers authorized by the Consumer Fraud Act in particular." *Id.* at 110 (citing *Publishers Clearing House, Inc.*, 633 N.W.2d at 737-38).

In *Publishers Clearing House*, the court cited United States Supreme Court precedent likening an agency investigation to a grand jury, "which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion the law is being violated, or even just because it wants assurance that it is not." 633 N.W.2d at 736-37 (citing *United States v. Morton Salt*, 338 U.S 632, 642-43 (1950)). The court also cited *Iowa City Human Rights*

*Commission v. Roadway Express, Inc.*, 397 N.W.2d 508, 510 (Iowa 1986), which reaffirmed an agency's broad authority "to conduct preliminary investigations and issue administrative subpoenas in the field of public interest assigned to it." *Publisher's Clearing House*, 633 N.W.2d at 736.

This brings us to ACS's second argument: Iowa Code section 714.16(3)(b) does not authorize subpoena 2308. Having concluded section 714.16(4) furnishes authority for the issuance of the subpoena, we find it unnecessary to address this argument.

ACS's third contention that injunction relief is unavailable to the attorney general was not raised in the district court, nor was it addressed. Accordingly, the issue was not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537-38 (Iowa 2002).

We conclude the district court did not abuse its discretion in finding authority for the issuance of subpoena 2308.

## B. Injunction is Unconstitutional Prior Restraint

ACS next raises a First Amendment challenge to the district court's grant of injunctive relief. The attorney general responds with an error preservation concern, which ACS discounts. In its view, counsel's assertion in the district court that subpoena 2308 represented "a total abuse of State power" was sufficient to preserve error. To the contrary, this assertion was too vague and general to preserve a constitutional challenge for our review. *See Sievers v. Iowa Mut. Ins. Co.*, 581 N.W.2d 633, 638 (Iowa 1998).

As a fallback position, ACS notes the First Amendment issue "was fully briefed and argued in its resistance to" the first subpoena enforcement application. However, the issue was never decided in the court's ruling on the application. As noted, the attorney general withdrew its request for injunctive relief in the first subpoena enforcement proceeding, leading the court to conclude the issue was moot. Accordingly, even if we could look back to ACS's arguments in resistance to the first application, we have nothing to review. For these reasons, we decline to address the merits of ACS's First Amendment challenge to the attorney general's request for injunctive relief in subpoena 2308.

### C. Prior Consent Judgment as Bar to Relief

Finally, ACS contends the district court abused its discretion in concluding the consent judgment was no bar to the issuance of subpoena 2308. The attorney general again responds with an error preservation concern because this issue was only raised in connection with the first enforcement application, not the second.

The Attorney General is correct. ACS did not raise an argument regarding the effect of the consent judgment on subpoena 2308. In fact, at the hearing on the second enforcement application, ACS conceded it was not challenging the legitimacy of the original subpoena. It is clear the issue was not raised in this subpoena enforcement proceeding.

That said, the issue was arguably decided because the district court's second ruling was predicated on "the same reasons stated in the court's" first ruling and the first ruling addressed the effect of the consent judgment. Accordingly, we elect to address the issue on its merits.

As noted, the consent judgment stated in pertinent part:

> This Consent Judgment constitutes a full and final resolution of any and all claims by the Iowa Attorney General against Defendant for alleged violations of the CFA that occurred prior to the effective date of this Consent Judgment in connection with the acts and practices addressed in the Petition in this cause.

For several reasons, this and other language in the consent judgment did not bar the issuance or enforcement of subpoena 2308. First, the "acts and practices addressed in the Petition" underlying the consent judgment pertained to complaints in 2009 and 2010 and the complaints which were the subject of subpoena 2308 occurred in 2011. Second, the consent judgment barred "claims" rather than the investigation of claims. As the district court stated in its first ruling, "[a] subpoena for information from ACSI is, plainly, not a claim against it for an alleged violation of the [Consumer Fraud Act]." Third, while the consent judgment set forth certain procedures for future conduct, the district court correctly found these procedures limited ACS rather than the attorney general and did not restrict "the attorney general's authority to request information." Finally, ACS asserts the consent judgment did not require maintenance of all recordings. But, as ACS acknowledges, there was a caveat: "5% of all calls made into Iowa by ACS [had to be] recorded and preserved intact for 45 days in compliance with the Consent Judgment." In light of the 2011 complaints, the attorney general was entitled to investigate whether this condition was satisfied. As the court stated in *Publishers Clearing House,* "[t]o adopt [the defendant's] argument that it is excused from producing all of the information requested by producing some of it would allow it, rather than the attorney general, to determine the scope of the discovery." 633 N.W.2d at 737-38. This language also resolves

ACS's related contention that its partial compliance with the consent judgment renders the subpoena 2308 enforcement application moot. *Id.*

We conclude the district court did not abuse its discretion in ordering compliance with subpoena 2308 and in enjoining activity directed to Iowans pending compliance.

**AFFIRMED.**