In Re Grand Jury Proceedings          GJ-98-011-M    12/04/98   P
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


In Re Grand Jury Proceedings
Involving William Harry Vickers
and Joseph Haas.

                                        Case No. 98-GJ-11


                          O R D E R

     On October 29, 1998, William Harry Vickers was served with a

grand jury subpoena, directing him to provide major case prints

(i.e., fingerprints and palm prints), saliva, and hair samples to

the federal grand jury investigating recent pipe bombing

incidents in Concord, New Hampshire.[1]  On November 2, 1998,

Joseph Haas, Jr., received a similar subpoena, seeking major case

prints, saliva, and hair samples.  Neither man provided the grand

jury with the requested samples.  Consequently, on application of

the government, the court ordered them to appear and show cause

why they should not be held in contempt.


     On November 6, 1998, a show cause hearing was held.  Mr.

Haas appeared, pro se, and Mr. Vickers appeared with counsel,

_____

     [1]    The subpoena also directed Mr. Vickers to provide the
grand jury with handwriting exemplars and fingernail scrapings.
However, after receiving additional information from the FBI, the
Assistant United States Attorney, acting as counsel to the grand
jury, withdrew the requests for handwriting exemplars and
fingernail scrapings.

Attorney Paul McEachern.  After determining that the government did not plan to reference any information pertinent to the grand jury's investigation not already known to the public, the court concluded, and the government agreed, that the hearing need not be sealed.  The general public was, therefore, permitted to attend.[2]

Attorney McEachern explained that he had been retained by Mr. Vickers that afternoon, so was not adequately prepared to address the legal issues he thought relevant.  He requested, and was granted, an opportunity to file a written motion to quash the subpoena served upon his client, supported by a legal memorandum.  Mr. Haas sought to join in that anticipated motion.  The government had no objection and the court allowed it.  Consequently, the court deferred ruling on whether either Mr. Vickers or Mr. Haas (collectively, "respondents") should be held in contempt for failing to comply with the subpoenas, pending review of the anticipated motions to quash and supporting memoranda, which have since been filed.

---

[2]    However, because the government's Ex Parte Petition for Order to Show Cause (document no. 1) discloses matters and evidence pending before the grand jury, it shall remain subject to seal.

Many of the arguments raised by respondents focus on the government's alleged failure to comply with the provisions of the United States Attorney's Manual (e.g., failure to provide an advice of rights form, failure to provide "subject" or "target" letters, etc.) and/or relate to items of evidence no longer sought by the grand jury (i.e., fingernail scrapings and handwriting exemplars). Those claims do not warrant much discussion as they are adequately and correctly addressed in the government's objection to the motion to quash (document no. 12). Moreover, neither the United States Attorney nor the grand jury is strictly bound by the administrative guidelines set forth in the United States Attorney's Manual when issuing a grand jury subpoena. See In re Grand Jury Proceedings, 632 F.Supp. 374 (E.D. Texas 1986).

The core of respondents' remaining argument is based upon the assumption that the only basis for the grand jury's subpoena is their outspoken and constitutionally protected views critical of the government. Thus, they claim that the subpoenas at issue violate their First Amendment rights. They also assert that the grand jury subpoenas violate their Fourth Amendment right to be free from unreasonable searches and seizures. Consequently, they say that the only means by which the grand jury can obtain the

requested evidence without unlawfully imposing on their constitutional rights is by obtaining a search warrant, supported by probable cause and issued by a neutral and detached judicial officer.

First, it is important to note that matters pending before, and evidence presented to, the grand jury are kept secret. Accordingly, respondents do not know what evidence is before the grand jury, nor why the grand jury might be interested in particular information. Similarly, the FBI agent who interviewed Mr. Vickers (and upon whose alleged statements respondents rely in support of what are essentially claims of harassment) likely was also unaware of such evidence (or, even if he was aware of it, he was legally obligated not to share it with respondents). Consequently, respondents' assertion that they have been "targeted" by the grand jury based solely upon their outspoken but constitutionally protected views is, at best, unsupported speculation.

The court is obviously sensitive to the need to keep secret those matters and that evidence pending before the grand jury. Based on an in camera review of the government's submissions, the court is satisfied that the grand jury's purpose in issuing the

4

subpoenas is not to infringe respondents' First Amendment rights or otherwise harass them because of whatever social or political views they may espouse.  It is, therefore, sufficient to note that respondents are incorrect in asserting that the "exercise of [their] protected First Amendment right of petition was the criterion underpinning the government's decision to initiate [its] investigation."  Respondents' motion (document no. 10) at 4.  Accordingly, the court will focus exclusively on respondents' Fourth Amendment claims.[3]

I.   Scope of the Court's Review.

The grand jury occupies a unique position in the criminal justice system.

_____

[3]     Even if the court were to accept respondents' claim that the government must make a heightened showing justifying the issuance of the subpoenas at issue (on the strength of vague notions that such a showing is necessary whenever someone claims that First Amendment rights are implicated by a grand jury subpoena), the court would conclude that the government has made such a showing.  See Government's Ex Parte Petition for Order to Show Cause.  See generally, Branzburg v. Hayes, 408 U.S. 665 (1972) (rejecting the claim that a reporter has a conditional privilege under the First Amendment to refuse to appear and testify before a grand jury, but recognizing that a grand jury would have no justification for undertaking an investigation in bad faith or solely for the purpose of harassing or otherwise interfering with a reporter's relationship with his or her sources).  As noted above, in this case there is absolutely no basis upon which to suggest, much less conclude, that the grand jury is acting in bad faith or that it is seeking to harass respondents.

5

> [T]he grand jury is mentioned in the Bill of Rights, but not in the body of the Constitution. It has not been textually assigned, therefore, to any of the branches described in the first three Articles. It 'is a constitutional fixture in its own right.' In fact the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office.

United States v. Williams, 504 U.S. 36, 47 (1992) (citations omitted). Because grand jury proceedings are "other than a constituent element of a 'criminal prosecution,'" the Court has held that certain constitutional protections afforded in the context of a criminal prosecution (e.g., Fifth Amendment protections of the Double Jeopardy Clause, the Sixth Amendment's right to counsel, etc.) are inapplicable in proceedings before a grand jury. See id., at 49 (citing cases).

In light of those holdings, and recognizing the historical function of the grand jury as an independent investigatory body which acts as a buffer between the citizenry and government, the Court has been reluctant to measure the enforceability of grand

6

jury subpoenas against the same standards applicable to search warrants.  See, e.g., Hale v. Henkel, 201 U.S. 43, 76 (1906) (holding that while a grand jury subpoena for the production of books and papers may implicate the Fourth Amendment, when presented with a challenge to such a subpoena a court need only determine whether the request is "far too sweeping in its terms to be regarded as reasonable."); United States v. Calandra, 414 U.S. 338, 346 (1974) (quoting Henkel and again suggesting that Fourth Amendment rights are adequately protected when grand jury subpoenas are subjected to court review for reasonableness, but not for "probable cause").

In fact, the Court has held the Fourth Amendment applicable in the context of a grand jury's subpoena duces tecum only by analogy, concluding that the subpoena constitutes only a "figurative" or "constructive," and not an "actual" search and seizure.  Accordingly, the Court has observed (at least with regard to subpoenas duces tecum requiring the production of corporate documents):

> It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of the law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command.  This has been ruled most often perhaps in relation to grand jury investigations . . .. The

7

requirement of "probable cause, supported by oath or affirmation," literally applicable in the case of a warrant, is satisfied in that of an order for production by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in "describing the place to be searched, and the persons or things to be seized," also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry.

Oklahoma Press Publishing Co. v. Wallace, 327 U.S. 186, 209 (1946).

Interpreting Supreme Court precedent on this issue, Judge Friendly observed:

These decisions, and the reasoning behind them, suggest that the Court may be moving toward the position, urged by Mr. Justice Miller in Boyd and Mr. Justice McKenna in Hale v. Henkel and strongly intimated in Oklahoma Press Publishing Co. v. Walling, that restriction on overbroad subpoenas duces tecum rests not on the Fourth Amendment but on the less rigid requirements of the due process clause.

In Re Grand Jury Subpoena Served upon Simon Horowitz, 482 F.2d 72, 79 (2d Cir. 1973). So, while the Constitution undoubtedly protects a citizen from an overly broad grand jury subpoena, the

8

subpoena is not subject to the same type or degree of scrutiny under the Fourth Amendment as are search warrant applications.

When a grand jury subpoena arguably implicates a citizen's rights under the Fourth Amendment, the means by which those rights are vindicated usually involves two steps. First, the subject of the subpoena normally files a motion to quash, setting forth in detail why he or she believes the subpoena is improper, unreasonable, or overly broad. Next, a judicial officer reviews those claims, determines whether the citizen's constitutional rights are, in fact, implicated by the subpoena and, if so, balances those rights against the grand jury's need for the requested information. As a starting point in its inquiry, however, the reviewing court must be mindful that a "presumption of regularity attaches to grand jury proceedings and hence to a grand jury subpoena." In re Lopreato, 511 F.2d 1150, 1152 (1st Cir. 1975). Accordingly, "[t]hose challenging such a subpoena have the burden of showing that irregularity exists." Id. (citation omitted). See also United States v. R. Enterprises, Inc., 498 U.S. 292, 301 (1991) (holding that because "a grand jury subpoena issued through normal channels is presumed to be reasonable, . . . the burden of showing unreasonableness must be on the [subpoena] recipient who seeks to avoid compliance," but

9

recognizing that a court may be justified, under some circumstances, in requiring the government to "reveal the general subject of the grand jury's investigation before requiring the challenging party to carry its burden of persuasion.").

With those principles in mind, then, this court must determine whether: (1) respondents' constitutional rights are implicated by the subpoenas (which will determine the appropriate level of scrutiny); and (2) whether respondents have stated adequate grounds to justify quashing the subpoenas. See generally Fed. R. Crim. P. 17(c) (authorizing the court to quash a subpoena for the production of documentary evidence or "other objects" if compliance would be unreasonable or oppressive). However, it is important to remember that even when a citizen's Fourth Amendment rights are arguably implicated by a grand jury's subpoena, the relevant inquiry is not whether the subpoena is supported by "probable cause." Instead, the court must simply determine whether the subject matter and scope of the subpoena are reasonable under the circumstances, including consideration of the subpoenaed person's constitutional rights. See, e.g., Hale, 201 U.S. at 76.

10

The following questions are pertinent to that "reasonableness" assessment: (1) Does the subpoena command the production of things relevant to the investigation being pursued by the grand jury?; (2) Does the subpoena specify with sufficient particularity the things being sought?; (3) Is the subpoena sufficiently narrow in scope to be considered reasonable?; (4) Has the subpoena issued for reasons other than to harass the subject?; and (5) Can the subject provide the requested evidence without unnecessary risk of personal harm (e.g., potentially dangerous invasive surgery) and/or personal humiliation (e.g., unnecessary invasion of bodily integrity or dignitary interests)? In short, the court must determine whether protected constitutional values or rights are likely to be unduly burdened or violated if the subpoena is not quashed. See, e.g., In re Grand Jury Subpoena Duces Tecum, 391 F.Supp. 991 (D.R.I. 1975). See generally Winston v. Lee, 470 U.S. 753 (1985); Cupp v. Murphy, 412 U.S. 291 (1973); Schmerber v. California, 384 U.S. 757 (1966).

I.   Grand Jury Subpoena of Fingerprints and Hair Samples.

To the extent the subpoenas issued in this case seek to compel the production of fingerprint samples, they plainly do not implicate respondents' Fourth Amendment rights.

11

Obtaining physical evidence from someone can implicate Fourth Amendment concerns at two different levels: the initial "'seizure' of the 'person' necessary to bring him into contact with government agents, and the subsequent search for and seizure of the evidence." United States v. Dionisio, 410 U.S. 1, 8 (1973) (citations omitted). As to the first step, "[i]t is clear that a subpoena to appear before a grand jury is not a 'seizure' [of the person] in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome." Id. at 9. As to the second step, respondents do not enjoy a constitutionally protected privacy interest in their fingerprints. See generally Cupp v. Murphy, 412 U.S. at 295 (characterizing fingerprints as "mere physical characteristics" which are "constantly exposed to the public."); Dionisio, 410 U.S. at 14 (holding that a person does not have a reasonable expectation of privacy with regard to physical characteristics which he or she routinely exposes to public view); Katz v. United States, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). See also Davis v. Mississippi, 394 U.S. 721, 727 (1969) (holding that the initial seizure of the defendant was unlawful, but noting, with regard to the second step in the Fourth Amendment analysis, that "[f]ingerprinting involves none

12

of the probing into an individual's private life and thoughts that marks an interrogation or search."); <u>In re Grand Jury Proceedings</u>, 632 F.Supp. at 376 ("The requirement that the witness must furnish [the grand jury with] . . . fingerprints and palm prints does not violate his Fourth or Fifth Amendment rights.").

Accordingly, respondents' initial position – that the grand jury cannot lawfully issue a subpoena requiring them to provide fingerprint samples without first meeting the probable cause requirements of the Fourth Amendment and obtaining a valid search warrant – is wrong. Because respondents' Fourth Amendment rights are not implicated by the grand jury's request for fingerprints, the court need only determine whether the evidence sought is potentially relevant to a legitimate investigatory purpose and whether requiring compliance with the subpoenas would be unreasonable or oppressive. <u>See</u> Fed. R. Crim. P. 17(c). Respondents' fingerprints plainly meet the test of relevance, <u>see</u> Government's Ex Parte Petition for Order to Show Cause (sealed document no. 1), and requiring production of the requested evidence will obviously impose minimal inconvenience, and certainly neither an unreasonable nor oppressive burden.

13

For essentially the same reasons, the court also rejects respondents' assertions with regard to the grand jury's demand for hair samples. The Court of Appeals for the First Circuit has held, at least implicitly, that a grand jury subpoena seeking hair samples need not be supported by either a warrant or probable cause. In re De Jesus Berrios, 706 F.2d 355 (1st Cir. 1983). Other circuit courts of appeals agree. See, e.g., In re Grand Jury Proceedings (Mills), 686 F.2d 135, 139 (3rd Cir. 1982) ("[W]e conclude that there is no greater expectation of privacy with respect to hair which is on public display than with respect to voice, handwriting or fingerprints. . . . If fingerprints can be subjected to compelled disclosure by the grand jury without implicating the Fourth Amendment, it follows logically that the hair strands can as well."); In re Grand Jury Proceedings Involving Eve Rosahn, 671 F.2d 690, 695 (2d Cir. 1982) (holding that a grand jury's subpoena of fingerprints, handwriting exemplars, and hair samples need not be supported by a search warrant or a showing of reasonableness).

Thus, it follows that the grand jury's request for hair samples, like fingerprints, does not implicate respondents' Fourth Amendment rights. Consequently, the scope of review applicable to a grand jury subpoena seeking hair samples is quite

14

limited. Here, the subpoenas describe the evidence sought with particularity; the evidence is reasonably related to a legitimate aspect of the grand jury's ongoing investigation; and requiring compliance with those subpoenas would impose neither an unreasonable nor oppressive burden. See Fed. R. Crim. P. 17(c).

Accordingly, to the extent the grand jury seeks major case prints and hair samples, respondents' motion to quash the subpoenas is denied.

II. Saliva Samples.

A more difficult issue is presented by the motion to quash as it pertains to the grand jury's request for saliva samples. Whether a grand jury may compel a citizen to submit saliva samples, absent some showing beyond the test set forth in Rule 17(c) (unreasonableness or oppressiveness), is a fairly open question. Respondents argue that because taking a saliva sample involves an undeniable intrusion compromising their right to bodily integrity, their Fourth Amendment right to be free from unreasonable searches and seizures is implicated. The court is inclined to agree: a grand jury subpoena compelling a citizen to provide saliva samples does implicate his or her Fourth Amendment rights. Therefore, it is necessary to balance the grand jury's

15

legitimate interest in conducting a thorough investigation and obtaining relevant evidence against respondents' constitutionally protected interests, to determine whether what is effectively a search and seizure is, nevertheless, reasonable.

The Supreme Court has not directly confronted the issue, commentators generally lament the state of confusion in this area of the law,[4] and the question appears to be one of first impression in this circuit.  However, a brief survey reveals that at least two federal district courts have ruled on the question, at least indirectly.  See United States v. Nicolosi, 885 F.Supp. 50 (E.D.N.Y. 1995); Henry v. Ryan, 775 F.Supp. 247 (N.D. Ill. 1991).  Other courts have addressed it in the related context of a grand jury subpoena seeking to compel the production of blood samples.  See, e.g., In re Grand Jury Proceedings (T.S.), 816 F.Supp. 1196 (W.D. Ky. 1993).

In Nicolosi, the district court was presented with a motion to quash a subpoena issued by the prosecution (not a grand jury),

_____

[4]    See, e.g., Paul S. Diamond, Federal Grand Jury Practice and Procedure, § 6.02 (3d ed. 1997); Floralynn Einesman, Vampires Among Us - Does a Grand Jury Subpoena for Blood Violate the Fourth Amendment?, 22 Am. J. Crim. L. 327 (1995); Rosemary Elizabeth-Ann Smith, A Proposal to Prevent Unlawful Bodily Intrusion in the Context of a Grand Jury Subpoena Duces Tecum, 19 U. Dayton L. Rev. 633 (1994).

16

after the subject of the subpoena had already been indicted. Factually, therefore, Nicolosi is distinguishable from the present case, in which neither respondent has been indicted (nor has either respondent been served with a "subject" or "target" letter). Nevertheless, the Nicolosi court's reasoning is instructive and helpful.

In Nicolosi, Judge Glasser observed that, in terms of implicating constitutional rights, evidence a grand jury might seek in the course of conducting a legitimate investigation should be viewed as falling along a continuum. Where particular evidence lies on that continuum will dictate the extent of the showing the government must make in order to justify enforcement of a subpoena.

> Cast in terms of those items upon which the courts have already spoken, on one end of the continuum are things such as voice, hair and handwriting samples. These items are outwardly manifested and in the public domain. Obtaining these samples does not implicate any privacy or dignity interests and can be affected without a full Fourth Amendment procedure. . . .

> On the other end of the continuum is a blood sample and presumably other internal fluids which could only be obtained by extracting them from the body. Obtaining such samples requires full compliance with Fourth Amendment procedures. These items are not in the public domain and privacy and dignitary interests are implicated by the method of obtaining the sample – an individual is required to submit to an agent of the

> state who extracts the sample by penetrating the
> subject's body.

Nicolosi, 885 F.Supp. at 55.  The court then concluded that saliva samples arguably "fall squarely in the middle of this continuum."  Id., at 55.

In In re Grand Jury Proceedings (T.S.), supra, the district court addressed a related question: "whether a grand jury subpoena, rather than a warrant, can be used to obtain blood samples."  Id., at 1205.  Relying upon Schmerber v. California, 384 U.S. 757 (1966), the court concluded that a "demand for blood does constitute a search within the protection of the Fourth Amendment."  Id.  Acknowledging that the Supreme Court had not yet addressed whether a grand jury subpoena may compel the production of blood, the district court reasoned that employing a grand jury subpoena in that manner would constitute an abuse of the grand jury's subpoena power.  Consequently, the court held that if the grand jury sought blood samples, the government would be required to obtain such evidence via a search warrant, supported by probable cause, and issued by a neutral and detached judicial officer.  Id. at 1205-06.

18

Regarding the subpoenas at issue in this case, the court is not persuaded that the reasoning of In re Grand Jury Proceedings (T.S.) should counsel the same result.  First, it is worth noting that the cited case involved a grand jury subpoena seeking blood (evidence at the far end of the posited Fourth Amendment privacy continuum), while the material sought here is saliva (evidence falling more toward the middle of that continuum).  Moreover, Supreme Court precedent in this area suggests that when a person's Fourth Amendment rights are implicated by production demands found in a grand jury subpoena (regardless of the type of evidence sought), the proper remedy is not to require the government (or grand jury) to obtain a search warrant.  See, e.g., Dionisio, 410 U.S. at 15 (holding that a grand jury subpoena seeking a voice exemplar did not implicate Fourth Amendment rights, but suggesting that even if it had, at most the government would have been required to demonstrate that the grand jury subpoena was "reasonable.").  Additionally, requiring the government or grand jury to obtain a search warrant before it could compel the production of a saliva sample would intrude to an unnecessary extent upon the grand jury's independent investigatory function.

19

That is not to say, however, that a citizen is without constitutional protection or a means by which constitutional guarantees can be enforced when confronted with a grand jury subpoena. When a legitimate constitutional right is implicated by a grand jury subpoena, a reviewing court will, in considering a motion to quash, ensure that the subject's constitutional rights are protected by determining whether the subpoena is "reasonable" under the circumstances. See Hale, supra; Fed. R. Crim. P. 17(c). And, during its inquiry into the "reasonableness" of the challenged subpoena, the court will balance the legitimate and protected privacy interests of those subpoenaed against the grand jury's legitimate need to conduct its investigation and obtain evidence relevant to its inquiry into possible criminal wrongdoing. See Winston v. Lee, 470 U.S. at 760 ("The reasonableness of . . . intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure.").

Turning to that balancing task, respondents have identified an interest protected by the Fourth Amendment: their right to bodily integrity and privacy. See generally Schmerber v. California, 384 U.S. 757 (1966). In response, the government has

20

demonstrated that the evidence sought: (1) is plainly relevant to a legitimate and ongoing investigation being conducted by the grand jury; (2) is described with sufficient particularity to notify respondents of precisely what is sought; (3) is not sought to harass respondents or to impose some burden because of their social or political views; (4) could be probative in identifying or eliminating persons who may have participated in, or may have knowledge of or evidence relating to, the crimes under investigation; (5) can be obtained from respondents with very minimal invasion of their bodily integrity (i.e., by simply swabbing the inside of the mouth); and (6) can be obtained with no risk of physical pain, injury, or embarrassment to respondents, and with the most minimal personal inconvenience.

This situation is, therefore, dramatically different from that presented in Winston v. Lee, supra, in which the government (not a grand jury) sought to compel a suspect to undergo potentially dangerous and highly invasive surgery to remove a bullet, of minimal comparative evidentiary value, from his shoulder.

On balance, therefore, the court concludes that the grand jury subpoenas at issue are neither "unreasonable" nor otherwise

21

properly subject to an order to quash. The grand jury's justification for issuance and enforcement of those subpoenas is more than adequate to warrant denial of respondents' motion to quash.

## Conclusion

For the foregoing reasons, respondents' motion to quash (document no. 10) is denied. Respondents are hereby **ORDERED** to, and **SHALL** comply with the subpoenas at issue, without fail, **not later than December 11, 1998**, or as otherwise directed by the grand jury, by providing the grand jury with major case prints, hair samples, and saliva samples in accordance with procedures established by the grand jury or the United States Attorney. Failure to comply will expose respondents to coercive contempt sanctions.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

December 4, 1998

cc:  United States Attorney
     Paul McEachern, Esq.
     Joseph Haas, pro se

22