**In re Shaddie Clark SHABAZZ.**

No. Civ.A. 202MC0007.

United States District Court,
D. South Carolina,
Charleston Division.

April 23, 2002.

Rhett DeHart, Assistant United States Attorney, Charleston, SC, for government.

Joseph Leroy Smalls, Jr., Columbia, SC, for respondent.

## ORDER

NORTON, District Judge.

This case is before the court upon the magistrate judge's recommendation that defendants' motion to quash be denied. This record includes a report and recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

### I. Background

Petitioner Shaddie Clark Shabazz, a female prison guard at the federal prison in Estill, S.C., is under investigation by the F.B.I. for allegedly engaging in sexual relations with inmates and for extortion related to this misconduct. On December 12, 2001, the federal grand jury in Charleston, S.C., served a subpoena duces tecum ordering Petitioner to appear on January 15, 2002, and provide an oral sample of her saliva for DNA testing. On January 8, 2002, Petitioner filed a motion to quash the subpoena duces tecum on the grounds that a saliva sample for DNA testing is an "invasive procedure," and she cannot be forced to submit to such testing without a showing of probable cause. (Mem.Supp. Mot. Quash at 1–2.)

### II. Review of Magistrate Judge's Report

A party may object, in writing, to a magistrate judge's report within ten days after being served with a copy of that report. *See* 28 U.S.C. § 636(b)(1). This court is charged with conducting a *de novo* review of any portion of the magistrate judge's report to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. *See* 28 U.S.C. § 636(b)(1) (1994). The magistrate judge filed his report and recommendation denying Petitioner's motion to quash on February 1, 2002. Petitioner timely filed

her written objections on February 11, 2002.

## III. Legal Analysis

"Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law." *U.S. v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). "The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *Id.* However, "the grand jury's subpoena power is not unlimited. It may consider incompetent evidence, but it may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law." *Id.* at 346, 94 S.Ct. 613 (internal citations omitted). Accordingly, "[t]he grand jury is ... without power to invade a legitimate privacy interest protected by the Fourth Amendment." *Id.*[1]

The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In deciding whether a Fourth Amendment violation has occurred, the threshold question is to determine whether the challenged governmental act is a "search" or "seizure" within the scope of the Fourth Amendment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). The Fourth Amendment is implicated when the person invoking its protection can claim a "legitimate expectation of privacy" in the place searched or the item seized. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (citing *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); *U.S. v. Simons* 206 F.3d 392, 398 (4th Cir.2000). A "legitimate expectation of privacy" is "one that society is prepared to recognize as objectively reasonable." *Simons* 206 F.3d at 398 (internal citation omitted).

"[T]he obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels—the 'seizure' of the 'person' necessary to bring him into contact with government agents and the subsequent search for and seizure of the evidence." *U.S. v. Dionisio*, 410 U.S. 1, 8, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (internal citation omitted). "[A] subpoena to appear before a grand jury is not a 'seizure' in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome[,]" because there is an "historically grounded obligation of every person to appear and give his evidence before the grand jury." *Id.* at 9–10, 93 S.Ct. 764.[2] As to the subsequent search for and seizure of the evidence, it is well-established that "a physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable." *Skinner*, 489 U.S. at 616, 109 S.Ct. 1402; *see Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16

---

1. In addition to Fourth Amendment strictures, grand jury subpoenas duces tecum are also governed by Rule 17(c) of the Federal Rules of Criminal Procedure, which provides:

   A subpoena may also command the person to whom it directed to produce the books, papers, documents or other documents designated therein. The court on motion made promptly may quash or modify the subpoe-

   na if compliance would be unreasonable or oppressive.
   *See United States v. R. Enterprises*, 498 U.S. 292, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991).

2. Moreover, there is no "seizure" of Petitioner's person in this case because the subpoena gives her the option of submitting the saliva sample to a grand jury representative without appearing before the grand jury.

L.Ed.2d 908 (1966) (blood test for alcohol); *Winston v. Lee*, 470 U.S. 753, 760–61, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (surgical intrusion to remove a bullet). However, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351, 88 S.Ct. 507. Accordingly, grand jury subpoenas compelling voice samples, *Dionisio*, 410 U.S. at 15, 93 S.Ct. 764, and handwriting samples, *U.S. v. Mara*, 410 U.S. 19, 21–22, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), are not "searches" and therefore do not implicate the Fourth Amendment. *See also Davis v. Mississippi*, 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (stating in dicta that "[f]ingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search"); *In re Grand Jury Proceedings (Mills)*, 686 F.2d 135, 139 (3d Cir.1982) (finding that "there is no greater expectation of privacy with respect to hair which is on public display than with respect to voice, handwriting or fingerprints.")

However, this category of "non-searches" of publicly displayed physical evidence is limited. The Supreme Court held that unlike voice exemplars, handwriting exemplars, and fingerprints, a search of scrapings below a defendant's fingernails went "beyond mere physical characteristics constantly exposed to the public and constituted the type of severe, though brief, intrusion upon cherished personal security that is subject to constitutional scrutiny." *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (internal citations omitted). Moreover, breathalyzer tests and urine samples are "searches" within the meaning of the Fourth Amendment. *Skinner*, 489 U.S. at 613–614, 109 S.Ct. 1402. The Court explained that forcing a person to produce "deep lung" breath "implicates similar concerns about bodily integrity" as a blood test. *Id.* at 616–17, 109 S.Ct. 1402. In addition, the Court noted that a chemical analysis of a urine sample to obtain physiological data is a further invasion of a person's privacy interests because it "can reveal a host of private medical facts about [a person], including whether he or she is epileptic, pregnant, or diabetic." *Id.*

Courts that have addressed the issue of saliva samples have found them to be a "searches" within the meaning of the Fourth Amendment. *In re Grand Jury Proceedings Involving Vickers*, 38 F.Supp.2d 159, 165 (D.N.H.1998) ("A grand jury subpoena compelling a citizen to provide saliva samples does implicate his or her Fourth Amendment rights."); *United States v. Nicolosi*, 885 F.Supp. 50, 56 (E.D.N.Y.1995) (holding that a saliva sample is "properly deemed a search under the Fourth Amendment"); *Henry v. Ryan*, 775 F.Supp. 247, 253 (N.D.Ill.1991) (holding that a saliva sample is a Fourth Amendment search because "extracting a saliva sample seems to involve the same sort of intrusion that goes beyond the physical characteristics exposed to the public and into the security of the person").

■ This court agrees that a grand jury subpoena duces tecum requiring Petitioner to submit a saliva sample for the purpose of DNA testing invades a "legitimate expectation of privacy" and is therefore a "search" within the meaning of the Fourth Amendment.[3] The subpoena duces

---

**3.** The taking of the sample may also be considered a seizure of the person's "possessory interest's in his bodily fluids," but the court need not address this issue because "the privacy considerations protected by this characterization are adequately taken into account by [the] conclusion that such intrusions are searches." *Skinner*, 489 U.S. at 617 n. 4, 109 S.Ct. 1402.

tecum would require Petitioner to allow an agent of the grand jury to place a swab on the interior of her mouth and obtain a sample of saliva. Although the invasion of privacy is not as great as the blood test in *Schmerber,* 384 U.S. at 757, 86 S.Ct. 1826, or the bullet-removal procedure in *Winston,* 470 U.S. at 753, 105 S.Ct. 1611, it nonetheless involves more than "physical characteristics constantly exposed to the public," *Cupp,* 412 U.S. at 295, 93 S.Ct. 2000. It is reasonable to expect that the interior of one's mouth will not come into unwanted physical contact with the public. The expectation of privacy as to the interior of the mouth is at least as great as the privacy interest in "deep lung" breath recognized by the Court in *Skinner,* 489 U.S. at 617–18, 109 S.Ct. 1402, or the fingernail scrapings in *Cupp,* 412 U.S. at 295, 93 S.Ct. 2000. Moreover, Petitioner has a separate privacy interest in preventing the government from obtaining the vast array of data that can be ascertained through an analysis of the DNA. *Skinner,* 489 U.S. at 617–18, 109 S.Ct. 1402.

However, a determination that the subpoena duces tecum is a "search" within the scope of the Fourth Amendment does not end the analysis. "[T]he Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner,* 489 U.S. at 619, 109 S.Ct. 1402. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant [and] . . . the showing of probable cause required by the Warrant Clause." *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (citing *Skinner,* 489 U.S. at 619, 109 S.Ct. 1402). However, under certain circumstances, searches and seizures may be permissible under the Fourth Amendment "based on suspicions that, although 'reasonable,' do not rise to the level of probable cause."

*New Jersey v. T.L.O,* 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (internal citations omitted); *see, e.g., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that police may engage in a protective stop and frisk based on reasonable suspicion). A grand jury need not have probable cause to issue a subpoena because "the very purpose of requesting the information is to ascertain whether probable cause exists." *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 297, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). "Unless subpoenas are warrants, they are limited by the general reasonableness standard of the Fourth Amendment, . . . not by the probable cause requirement." *In re Subpoena Duces Tecum,* 228 F.3d 341, 348 (4th Cir.2000); *see also Calandra,* 414 U.S. at 346, 94 S.Ct. 613 (quoting *Hale v. Henkel,* 201 U.S. 43, 76, 26 S.Ct. 370, 50 L.Ed. 652, (1906)) ("A grand jury's subpoena duces tecum will be disallowed if it is 'far too sweeping in its terms to be regarded as reasonable' under the Fourth Amendment.").

Petitioner argues that "*Schmerber* and its progeny" require a showing of "probable cause" because the saliva sample is an "invasive procedure." In *Schmerber,* the Supreme Court held that a police blood test for the purpose of determining a suspected drunken driver's alcohol content was "reasonable" because the evidence of alcohol in the blood would disappear during the time necessary to obtain a search warrant. 384 U.S. at 770–71, 86 S.Ct. 1826. Although the Court upheld the warrantless search, it noted the existence of probable cause. *See id.* at 770, 86 S.Ct. 1826. The Court explained that "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained." *Id.* at 769–70, 86 S.Ct. 1826. Accordingly, the Court reasoned that "search warrants

are ordinarily required ... where intrusions into the human body are concerned." *Id.* In *Winston v. Lee,* 470 U.S. at 753, 105 S.Ct. 1611, the Court held that a state court order directing Lee, who had been arrested and charged with robbery, to undergo surgery to remove the bullet lodged under his left collarbone was an "unreasonable" search under the Fourth Amendment. The Court explained that although "the reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interest in privacy and security are weighed against society's interests in conducting the procedure," the "threshold requirement" was the existence of probable cause. *Id.* at 760, 105 S.Ct. 1611.

This case, however, is distinguishable from *Schmerber* and *Winston* on two grounds. Most important, neither of those cases involved a grand jury subpoena; therefore the grand jury's exemption from the "probable cause" standard was not applicable. *See In re Subpoena Duces Tecum,* 228 F.3d at 348. Moreover, the privacy concerns that led the Court to require probable cause in those cases are not as pronounced in this case because a saliva swab is not as intrusive as a blood test or a surgical bullet-removal procedure. The Court in *Winston* described the *Schmerber* test as applicable to "surgical intrusions beneath the skin." 470 U.S. at 760, 105 S.Ct. 1611. Although the saliva swab involves a slight invasion of a person's bodily integrity, it is not a "surgical procedure" and therefore does not fall within *Schmerber's* threshold requirement of probable cause. *Id.* Thus, no showing of probable cause is needed before the grand jury may issue a subpoena duces tecum requiring Petitioner to submit a saliva sample.

■ However, "[w]hen the balance of interests precludes insistence on a showing of probable cause, [courts] have usually required 'some quantum of individualized

suspicion' before concluding that a search is reasonable." *Skinner,* 489 U.S. at 624, 109 S.Ct. 1402 (quoting *United States v. Martinez–Fuerte,* 428 U.S. 543, 560, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). "While such suspicion is not an 'irreducible' component of reasonableness", the Supreme Court has recognized "only limited circumstances in which the usual rule does not apply." *City of Indianapolis v. Edmond,* 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (quoting *Martinez–Fuerte,* 428 U.S. at 561, 96 S.Ct. 3074)). First, the Court has upheld certain regimes of suspicionless searches where the program was designed to serve "special needs, beyond the normal need for law enforcement." *Vernonia,* 515 U.S. at 646, 115 S.Ct. 2386 (upholding random drug test of student athletes for non-law enforcement purpose). Second, the Court has also allowed searches "for certain administrative purposes without particularized suspicion of misconduct, provided that those searches are appropriately limited." *Edmond,* 531 U.S. at 37, 121 S.Ct. 447; *see, e.g., New York v. Burger,* 482 U.S. 691, 702–704, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (upholding warrantless administrative inspection of premises of "closely regulated" business). Finally, the Court has upheld brief, suspicionless checkpoint programs, provided that their primary purpose was not "to detect evidence of ordinary criminal wrongdoing." *Edmond,* 531 U.S. at 37–38, 121 S.Ct. 447 (internal citations omitted).

■ The instant case does not fit within any of these recognized exceptions. Rather, the purpose of the saliva sample is plainly to advance the law enforcement objective of determining whether Petitioner was involved in illegal sexual relations with inmates. Therefore, although a showing of probable cause is not necessary, the grand jury subpoena duces tecum

requiring a saliva swab must be based on reasonable individualized suspicion that Petitioner was engaged in criminal wrongdoing. The government has submitted an affidavit in support of its subpoena. Because of the privacy concerns inherent in a case of this nature, the court has conducted an *in camera* review of this evidence and determined that it is sufficient to create reasonable individualized suspicion regarding Petitioner's involvement in the alleged crimes.

 Finally, the "means and procedures employed" in taking the saliva sample were not in themselves unreasonable under the Fourth Amendment. *Schmerber,* 384 U.S. at 768, 771–72, 86 S.Ct. 1826. To determine the reasonableness of procedures to obtain physical evidence, the "extent to which the procedure may threaten the safety or health of the individual" and the "extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity" should be "[w]eighed against ... the community's interest in fairly and accurately determining guilt or innocence." *Winston,* 470 U.S. at 762, 105 S.Ct. 1611. A balancing of these factors in this case reveals that the procedure used to obtain the saliva swab is plainly "reasonable" under the Fourth Amendment. First, there is no evidence that the saliva swab presents any safety or health risk to the Petitioner. Second, the saliva sample is a relatively minor intrusion into Petitioner's dignitary interest in personal privacy and bodily integrity. The sample is obtained by simply swabbing the inside of her mouth and does not involve any risk of pain or embarrassment. On the public interest side of the equation, the grand jury has a clear interest in obtaining the DNA as highly probative evidence of identifying *or* eliminating Petitioner as a suspect in the case. The saliva swab is much less intrusive than the blood sample procedure upheld by the Court in *Schmerber.* 384 U.S. at 771–72, 86 S.Ct. 1826. And it

is easily distinguishable from the operation in *Winston,* which was potentially dangerous and was of uncertain evidentiary value. 470 U.S. at 763–65 & n. 10, 105 S.Ct. 1611. Thus, the means and procedures used to obtain the saliva sample are "reasonable" under the Fourth Amendment. *See Vickers* 38 F.Supp.2d at 167–68 (holding that a saliva sample was less intrusive than a blood sample and was therefore reasonable).

### III. Conclusion

In summary, the grand jury subpoena duces tecum ordering that Petitioner submit a saliva sample for DNA testing is a "reasonable" "search" within the meaning of the Fourth Amendment because it is supported by reasonable individualized suspicion that Petitioner was engaged in criminal wrongdoing and because the means and procedures used to obtain the sample are reasonable.

It is therefore,

**ORDERED,** that Petitioner's Motion to Quash be **DENIED.**

**AND IT IS SO ORDERED.**