**In re GRAND JURY PROCEEDING.**

United States District Court,
D. New Mexico.

July 12, 2006.

**MEMORANDUM OPINION
AND ORDER**

BRACK, District Judge.

This matter comes before the Court on Petitioner's Motion to Quash.[1] The Petitioner moves to quash the grand jury subpoena ordering him to provide a saliva sample for DNA testing. The Government filed a response, to which it attached the case agent's affidavit and an autopsy report. On July 5, 2006, I held a scheduling conference relating to this matter. Having considered the submissions, arguments of counsel, relevant law, and being otherwise fully advised, I grant the motion for the following reasons.

## I. Background.

The grand jury is investigating an alleged crime that may constitute a violation of 18 U.S.C. § 1513 (2000). Petitioner is one of three persons who received a target letter regarding this investigation. He was also served with a subpoena issued by the grand jury that ordered him to appear before the grand jury and to provide a saliva sample. (Pl.'s Mot. Quash Ex. A.) He is presently incarcerated.

## II. Discussion.

 The Judiciary has limited oversight of grand jury subpoenas. *United States v. R. Enter., Inc.,* 498 U.S. 292, 301, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). Indeed, a "grand jury subpoena[ ] issued through normal channels is presumed to be reasonable." *Id.; see* FED.R.CRIM.P. 17(c). At the same time, the grand jury's authority is not unlimited. *United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). For instance, it "may not invade a legitimate privacy interest protected by the Fourth Amendment." *Id.*

The Fourth Amendment proscribes "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. Therein, the U.S. Constitution protects individuals' legitimate " 'expectations of privacy' ": " 'the most comprehensive of rights and the right most valued by civilized men.' " *Winston v. Lee,* 470 U.S. 753, 758, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (quoting *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

 Courts have "consistently" found that these protections extend to government-compelled saliva samples. *Nicholas v. Goord,* 430 F.3d 652, 656 n. 5 (2d Cir. 2005) (compiling courts of appeal cases); *see United States v. Kimler,* 335 F.3d 1132, 1146 (10th Cir.2003). Indeed, a compelled saliva sample constitutes a Fourth Amendment "search," even in the prison context. *See Boling v. Romer,* 101 F.3d 1336, 1340 (10th Cir.1996). As such, a grand jury subpoena seeking a saliva sample must be "reasonable." *See R. Enter. Inc.,* 498 U.S. at 297.

Defining what is "reasonable" in the grand jury subpoena context, however, is no simple task. *See United States v.*

---

1. The Court originally filed its decision under seal. For publication, all identifying information has been redacted to safeguard the confidentiality of the grand jury's proceedings.

*Dionisio,* 410 U.S. 1, 9, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). This is particularly true where the evidence sought by the grand jury subpoena involves a "bodily intrusion." *Compare, e.g., id.* (subpoena seeking voice exemplar) (evidence requested did not constitute a "search": no reasonableness showing required), *and United States v. Mara,* 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (subpoena seeking handwriting exemplar) (same), *with Schmerber v. California,* 384 U.S. 757, 768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (post-arrest blood sample) (evidence requested constituted a "search": warrant or probable cause plus applicable exception required). Neither the Supreme Court nor the courts of appeal have addressed the issue squarely.

■ Saliva samples, clearly, may not be compelled "on the *mere chance* that desired evidence might be obtained." *Schmerber,* 384 U.S. at 768, 86 S.Ct. 1826 (emphasis added). To the contrary, the Supreme Court has recognized that "probable cause" is the "threshold" for Fourth Amendment "reasonableness." *Winston,* 470 U.S. at 760, 105 S.Ct. 1611 (discussing *Schmerber,* 384 U.S. at 768, 86 S.Ct. 1826). Accordingly, as with any Fourth Amendment "search," the starting point must be that "reasonableness" demands a: (1) valid warrant (or probable cause coupled with an applicable "warrant rule" exception); and (2) showing that the "search" will be executed in a "reasonable" manner.[2] *Marshall v. Columbia Lea Reg. Hosp.,* 345 F.3d 1157, 1171–72 (10th Cir.2003) (quoting *Schmerber,* 384 U.S. at 758, 770, 86 S.Ct. 1826).

Yet, the Supreme Court has declined to extend all constitutional protections applicable to criminal prosecutions, to grand jury proceedings. *E.g., Calandra,* 414 U.S. at 346, 94 S.Ct. 613 (finding the Exclusionary Rule inapplicable to grand jury investigations). The high court has also consistently underscored that the grand jury enjoys broad authority in conducting criminal investigations. *See id.*

Relying on this line of cases, several district courts have concluded that no probable cause showing is required for a subpoena ordering a saliva sample. *In re Shabazz,* 200 F.Supp.2d 578, 584 (D.S.C. 2002); *In re Grand Jury Proceedings Involving Vickers,* 38 F.Supp.2d 159, 162 (D.N.H.1998); *Henry v. Ryan,* 775 F.Supp. 247, 254 (N.D.Ill.1991). These courts held that grand jury subpoenas are exempt from the probable cause "threshold." *See In re Shabazz,* 200 F.Supp.2d at 584.

In defining the "reasonableness" standard in this context, some of these courts have found that a reasonable "individualized suspicion" must exist for believing that the petitioner was "involve[d] in the alleged crimes." *Id.* (*in camera* hearing held); *Henry,* 775 F.Supp. at 254. But, adding to the confusion, at least one court required the reviewing district court to find only the subpoena's "subject matter and scope ... reasonable under the circumstances." *In re Grand Jury Proceedings Involving Vickers,* 38 F.Supp.2d at 162 (*in camera* review of government's submissions). In any event, these sister courts all concluded that the Supreme Court would not require-in the context of a grand jury subpoena implicating a Fourth Amendment bodily-intrusion "search"-that a subpoena "be supported by 'probable cause.'" *See In re Grand Jury Proceedings Involving Vickers,* 38 F.Supp.2d at

---

2. Petitioner's motion did not challenge the reasonableness of the saliva sample sought by the underlying subpoena.

162 (citing *Hale v. Henkel*, 201 U.S. 43, 76, 26 S.Ct. 370, 50 L.Ed. 652 (1906)).

The Court finds these decisions unpersuasive. First, the high court cases cited by these decisions are distinguishable: they did not consider grand jury subpoenas that ordered Fourth Amendment "searches" involving *bodily intrusions*. *See, e.g., R. Enter., Inc.*, 498 U.S. at 297, 111 S.Ct. 722 (obscene materials); *Dionisio*, 410 U.S. at 15, 93 S.Ct. 764 (voice exemplar); *Calandra*, 414 U.S. at 346, 94 S.Ct. 613 (business records); *Hale*, 201 U.S. at 76, 26 S.Ct. 370 (books). This distinction is "constitutionally significant." *Nicholas*, 430 F.3d at 658.

Second, because these Supreme Court cases did not consider a bodily intrusion, the high court had no occasion to reconcile *Schmerber* and its progeny with its cases speaking to the grand jury's unique function. *Compare Schmerber*, 384 U.S. at 768–70, 86 S.Ct. 1826, *with e.g., R. Enter. Inc.*, 498 U.S. at 297. Indeed, as noted above, the high court has still not considered a grand jury subpoena that ordered a Fourth Amendment "search" involving a bodily intrusion. *Cf. United States v. Noble*, 433 F.Supp.2d 129, 133 n. 3 (D.Me. 2006) (noting that lower "[c]ourts have erred on the side of applying the *Schmerber* balancing test to requests for saliva samples even though, technically, procedures to collect such samples entail no intrusion beneath the skin" (citations omitted)).

The *In re Shabazz* case warrants further mention. There, the district court placed much weight on the Supreme Court's admonition that, "A grand jury's subpoena duces tecum will be disallowed if it is 'far too sweeping in its terms to be regarded as reasonable' under the Fourth Amendment." *Calandra*, 414 U.S. at 346, 94 S.Ct. 613 (quoting *Hale*, 201 U.S. at 76, 26 S.Ct. 370), *cited in In re Shabazz*, 200

F.Supp.2d at 583. Notably, however, this language speaks to whether a subpoena's "description" of the evidence it seeks to compel is sufficiently specific. *See id.; Hale*, 201 U.S. at 76, 26 S.Ct. 370 (subpoena may not be overly broad or vague). As such, the high court did not speak to what *standard* of reasonableness applies to grand jury subpoenas. *See Calandra*, 414 U.S. at 346, 94 S.Ct. 613 (discussing the grand jury powers generally).

In addition, the *In re Shabazz* court relied on a Court of Appeals case in finding the probable cause standard inapplicable to grand jury subpoenas. *Id.* (citing *In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir.2000)). Specifically, the district court cited the Fourth Circuit's decision for the proposition that grand jury subpoenas are not subject to the Fourth Amendment's "probable cause requirement." *Id.* .

Yet, the Fourth Circuit's decision considered whether *administrative* subpoenas for records must be supported by probable cause. *See In re Subpoena Duces Tecum*, 228 F.3d at 347–48 (citing 18 U.S.C. § 3486). Unlike the instant case and *In re Shabazz*, the Fourth Circuit's inquiry arose out of the highly-regulated federal health care investigation context. *Compare id.* (Congress, pursuant to § 3486, expressly authorized the Secretary of the Treasury to issue a subpoena compelling the production of statutorily specified items), *with In re Shabazz*, 200 F.Supp.2d at 583 (grand jury issued subpoena for saliva sample). The Fourth Circuit's decision is also distinguishable from the facts here in that the subpoena pertained to business records, rather than a bodily intrusion. *See In re Subpoena Duces Tecum*, 228 F.3d at 347–48. For these reasons, the Court finds *In re Shabazz* unconvincing.

In contrast to the aforementioned cases, at least one district court held that a grand jury subpoena could not compel a "search" involving a bodily intrusion. *In re Grand Jury Proceedings (T.S.)*, 816 F.Supp. 1196, 1205–06 (W.D.Ky.1993). Therein, the court found the proper analytical starting point to be *Schmerber* and its line of cases, rather than *R. Enterprises, Inc. Id.* at 1209.

The *In re Grand Jury Proceedings (T.S.)* court considered the legality of a grand jury subpoena seeking a blood sample. *See In re Grand Jury Proceedings (T.S.)*, 816 F.Supp. at 1205–06. In holding that a warrant, rather than a subpoena, was necessary, the court persuasively relied upon *Schmerber's* rule that probable cause is the "threshold" for Fourth Amendment reasonableness. *See id.* (citations omitted). Therein, the district court noted that the Supreme Court has "repeatedly" emphasized that searches requiring bodily intrusion "must be viewed" with "special sensitivity." *See id.* Additionally, the court found that *R. Enterprises, Inc.* "neither constrain[ed]" "nor direct[ed]" its Fourth Amendment inquiry because the case "involved no Fourth Amendment challenge." *Id.* (citation omitted). The district also addressed the tenability of imposing a probable cause requirement on grand jury subpoenas. *See id.* at 1203. Concluding that a probable cause showing was practicable, the court granted the motion to quash the grand jury subpoena. *See id.* at 1203–04.

Given the lack of controlling authority and district courts' divergence on this issue, one tenet is clear: the reasonableness of a particular subpoena seeking a bodily intrusion warrants a "case-by-case approach." *Winston*, 470 U.S. at 760, 105 S.Ct. 1611; *e.g., In re Shabazz*, 200 F.Supp.2d at 583. In *Winston v. Lee*, the Supreme Court explained that, "The

Fourth Amendment is a vital safeguard of the right of the citizen to be free from unreasonable governmental intrusions into *any* area in which he has a reasonable expectation of privacy." *Winston*, 470 U.S. at 767, 105 S.Ct. 1611 (emphasis added). The *Winston* Court noted the "importance of probable cause" and that:

> Where the Court has found a lesser expectation of privacy, or where the search involves a minimal intrusion on privacy interests, the Court has held that the Fourth Amendment's protections are correspondingly less stringent. Conversely, however, the Fourth Amendment's command that searches be "reasonable" requires that when the State seeks to intrude upon an area in which our society recognizes a significantly heightened privacy interest, a more substantial justification is required to make the search "reasonable."

*Id.* at 760–61, 767, 105 S.Ct. 1611 (citing, *inter alia, Schmerber*, 384 U.S. at 768–69, 86 S.Ct. 1826). In essence, then, *Winston* recognized a fact-based continuum of "reasonableness" with "probable cause" being the threshold requirement. *See id.* at 760–61, 105 S.Ct. 1611. *Cf. Noble*, 433 F.Supp.2d at 134–35 (post-indictment motion to compel witnesses' saliva sample: "the government (whether *ex post* or *ex ante* ) bears the burden of demonstrating the requisite probable cause or, at the least, reasonable suspicion"); *United States v. Nicolosi*, 885 F.Supp. 50, 55–56 (E.D.N.Y.1995) (post-indictment subpoena: probable cause not threshold; "reasonableness" dictated entirely by where evidence falls on Fourth Amendment continuum).

Applying the *Winston* Court's fact-based analysis here, the grand jury subpoena seeks physical evidence from Petitioner that constitutes a "search." While Petitioner has a recognized privacy interest in his saliva, it is a less significant intrusion

than a compelled blood sample. *Compare Boling,* 101 F.3d at 1340 (saliva sample is a "minimal intrusion" of bodily integrity), *with Marshall,* 345 F.3d at 1171–72 (blood sample involves significant intrusion of body), *and In re Grand Jury Proceedings (T.S.),* 816 F.Supp. at 1205–06 (same); *see also Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 616–17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (recognizing a separate privacy interest in information contained in DNA). His Fourth Amendment dignitary concern must be weighed against the grand jury's important role in criminal investigations. *See id.*

Having received the exhibits attached to the Government's Response, it appears that the Government will not need to gather additional information to make a probable cause showing. Accordingly, this Court is hard pressed to see how requiring a warrant here would impede the grand jury's investigation in any regard. *Cf. Calandra,* 414 U.S. at 346, 94 S.Ct. 613 (declining to apply the Exclusionary Rule to grand jury proceedings because, *inter alia,* doing so would "significantly impede" its unique function).

As noted above, Petitioner is incarcerated and the grand jury seeks Petitioner's DNA for ordinary law enforcement purposes. Therefore, no recognized exception to the warrant rule applies that, coupled with demonstrated probable cause, would justify bypassing the requirement's procedural protections. *Cf. Schmerber,* 384 U.S. at 770–71, 86 S.Ct. 1826 ("exigent circumstances" exception); *Kimler,* 335 F.3d at 1146 ("special needs" exception).

Under these particular circumstances, requiring the Government to obtain a valid warrant would not hinder or delay the grand jury proceedings. As such, the subpoena duces tecum is not the proper procedural vehicle to obtain a saliva sample from Petitioner. *See In re Grand Jury Proceedings (T.S.),* 816 F.Supp. at 1205–06 (allowing subpoena for blood sample to issue would "transform the subpoena into an instrument by which an illegal search ... is effectuated"). The Court underscores, however, that its holding is limited to the underlying facts.

## III. Conclusion.

For the foregoing reasons, Petitioner's Motion to Quash is **granted.**

**IT IS SO ORDERED.**